**Beverly BILBREY, Plaintiff,**

v.

**WERTS NOVELTY CO., Defendant.**

**No. IP 93–414 C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 6, 1994.

---

Richard L. Darst, Mantel Cohen Garelick Reiswerg & Fishmann, Indianapolis, IN, for plaintiff.

Mark E. Furlane, Alan S. King, Gardner Carton & Douglas, Chicago, IL, Jeffrey M. Mallamad, Sharon L. Groeger, Bingham Summers Welsh & Spilman, Indianapolis, IN, for defendant.

## ENTRY

BARKER, Chief Judge.

Beverly Bilbrey ("Plaintiff") believes that her former employer, Werts Novelty Company ("Defendant" or "Werts") maintained a working environment that was hostile to women and retaliated against her by, among other things, discharging her from her job as a machine operator because she complained about this harassment and filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The Defendant presents the Court with a motion for summary judgment. For the reasons explained below, the Defendant's motion is denied.

## I. BACKGROUND

Werts hired the Plaintiff as a machine operator at its Muncie, Indiana facility on September 7, 1988. Her immediate supervisors were Dennis Webster and Randy Smith. Robert Harvey was General Manager. With one exception, all of the supervisors at Werts were male, all of the machine mechanics were male, while all of the machine operators in the Plaintiff's department were female. Webster, who the Plaintiff identifies as the source of most the harassment that she experienced during her tenure at Werts, was responsible for giving the Plaintiff her work assignments. According to the Plaintiff and others, Webster frequently attempted to date the female employees and when rebuffed he would find ways to retaliate against them. According to the Plaintiff:

Dennis Webster cursed female employees at Werts so badly that they have cried, had to stop work, gone to the bathroom to get away from him, lost production, and had to have Martha Smith or union representatives like Bilbrey or both talk to them to compose themselves before they could resume their work. . . .

Dennis Webster told Bilbrey "Don't fucking speak to me." He put a red light on Bilbrey's machine and told her that it was because she was a prostitute and a whore. No other employee had a red light on their machine. Dennis Webster called Bilbrey a prostitute, whore, bitch, slut, slutty, nasty, fucking bitch, stupid fucking bitch, dumb blond, dumb bleached blond, fat ass, and fat pig. He called Bilbrey those names and others about every day that he and Bilbrey worked the same shift. Webster stated to Bilbrey and other women many times, "You women are stupid and do not know how to run machines." Webster called women cattle. He did not talk to male employees the same way. Webster told Bilbrey that he would not screw Bilbrey with the tool that he had in his hand, let alone his own tool.

Plaintiff's Brief, at 4–5. According to the Plaintiff, she complained many times to Wert's management about Webster but to no avail. His abusive behavior continued. Other Wert's employees corroborate the Plaintiff's accounting of Webster's behavior. *See* Depositions of Sandra Burton, Nikki Mercer and Anna Lash.

The Plaintiff filed a sex discrimination claim with the EEOC in March, 1991. After that action, the Plaintiff believes that Werts made a concerted effort to undermine her work. She alleges that Webster would refuse to repair her machine when it was broken and would sabotage her work when it was functioning properly. She also claims that Werts failed to give her warning notices concerning her absences from work and misinformed her about the number of available absences she could use. Pursuant to the labor agreement that the Plaintiff's union negotiated with Werts, "[e]ach occasion of absence will count as one (1) point," and "[a]ny employee who accumulates eight (8) points in any twelve (12) month period of time will be discharged." On November 18, 1991, Werts terminated the Plaintiff for having more than eight absences in a twelve month period. According to the Plaintiff, it was Wert's practice that once an employee accumulated eight absences in a twelve month period to reinstate the employee with two points for future absences. *See* Plaintiff's Brief, at 8. Harvey advised the Plaintiff that she had been fired without her knowledge prior to November, 1991, and that she would only have one point upon her reinstatement. This agreement was memorialized in a contract between the Plaintiff, Wert's and the Union, which provided in pertinent part: "Thru an agreement with the Graphic Communications Union Local 17M, Beverly Bilbrey will be reinstated to work at Werts Novelty Company. This will be on a 'one time' only basis. She will be reinstated with a 1 point absence. If she is absent 1 more time before dropping a point she will be terminated with no recourse to the union review board." *See* Defendant's Reply Brief, at 6. In late January or early February, 1992, the Plaintiff was informed that she had dropped an absence since November, 1991, and understood that she then had two absences available due to the additional point that she received upon reinstatement. On February 17, 1992, the Plaintiff did not report to work and was fired. She contends that she was treated differently than other employees because she complained about harassment and filed a complaint with the EEOC, including being misinformed about her absences. The Defendant argues that the Plaintiff has failed to make a prima facie case of sexual harassment because the alleged incidents of sexual harassment consist solely of non-physical conduct that was not sexual in nature. Because the Plaintiff supposedly is unable to make this showing, the Defendant believes that she is unable to establish that her discharge was caused by her complaints of sexual harassment.[1]

---

1. The Defendant also argues that the Plaintiff has failed to make a prima facie case for discriminatory discharge. The Plaintiff's arguments on this point are framed in terms of retaliation for filing the EEOC complaint. The Court therefore construes the complaint as setting forth two claims:

## II. ANALYSIS

### A. Summary Judgment Standard

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wilson v. Williams,* 997 F.2d 348, 350 (7th Cir.1993); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). Having carefully evaluated the parties' respective arguments, the Court finds that Defendant has failed to meet its burden under *Celotex* and therefore its motion for summary judgment must be denied.

### B. The Plaintiff's Hostile Work Environment Claim

■ The Plaintiff's first claim is that she was abused and harassed at work because of her sex. Title VII of the Civil Rights act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Proving that discrimination based on sex has created a hostile or abusive work environment is one way

that a plaintiff may establish a violation of Title VII. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). An "abusive environment" exists when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment...." 477 U.S., at 65–66, 106 S.Ct. at 2404–05. Most recently, the Supreme Court explained that to determine whether the plaintiff's work environment is "hostile" within the meaning of Title VII, a court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* — U.S. —, —, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). In addition, the plaintiff must show that she was adversely affected by the conduct and that a reasonable person would also have been adversely affected. *See Brooms v. Regal Tube Co.,* 881 F.2d 412, 419 (7th Cir.1989); *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment and there is no Title VII violation." *Harris,* — U.S. at —, 114 S.Ct. at 370; *see also Saxton v. American Telephone & Telegraph, Co.,* 10 F.3d 526, 534 (7th Cir. 1993).

■ The Defendant argues that the Plaintiff is unable to make a prima facie case of discrimination because she was not sexually abused and the harassment that she did encounter was not sexual. In support of this argument, the Defendant directs the Court to *Rennie, supra,* where the Seventh Circuit explained that in order for a plaintiff to establish a prima facie case of sexual harass-

---

one for sexual harassment and one for retaliatory discharge.

ment based on a "hostile work environment," she must show:

> (1) that she was a member of a protected group; (2) that she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment or affected a term, condition, or privilege of employment.

*Id.,* at 1107.

The Court cannot accept the Defendant's contention that the conduct of Webster and his counterparts does not satisfy the second element of the test in *Rennie.* Placing a red light on the Plaintiff's machine and subjecting her to the kind of verbal assaults that the Plaintiff has alleged, many of which included terms such as "slut", "whore," and other sexually oriented language, is more than enough to constitute "verbal ... conduct of a sexual nature." *Id.* But even if this were not the case, the Court is unable to accept the Defendant's stunted interpretation of what is required to establish a prima facie case of harassment that creates a hostile work environment; in the Defendant's view, only conduct that is sexual can constitute harassment that is directed at one's sex. This not only is contrary to the language of Title VII, it expressly contradicts well-established Supreme Court and Seventh Circuit precedent.

 Title VII's prohibition of discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....", 42 U.S.C. § 2000e–2(a)(1), forbids discrimination that is based on the individual's gender (*i.e.* whether the individual is male or female). Sex discrimination, including harassment, can take many forms and is not limited to sexual behavior that is harassing. It is for this reason that the Supreme Court explained in *Meritor* that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent "to strike at the entire spectrum of

disparate treatment of men and women" in employment." *Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404, *quoting, Los Angeles Department of Water and Power v. Manhart,* 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978), *quoting, Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). The "entire spectrum of disparate treatment" encompasses abuse or harassment that is directed at an individual because of his or her gender. Consider for example a group of minority workers whose employer was racist and regularly battered them because of their minority status. Could anyone seriously be heard to argue that such behavior would not give rise to a claim of racial harassment based on a hostile working environment? Of course not. If this is so, then the same holds true for sex discrimination. That the focus of the discrimination has shifted from race, color, or nationality to gender is of no consequence; an employer who is abusive towards men or women because of their sex is every bit as culpable under Title VII as the battering racist. *See, e.g., Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir.1993) ("The predicate acts which support a hostile-environment sexual-harassment claim need not be explicitly sexual in nature. (citation omitted). Rather, the key issue 'is whether members of one sex are exposed to disadvantages terms or conditions of employment to which members of the other sex are not exposed.' *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993).")

 Such a finding does nothing to alter the test in *Rennie* as it simply recognizes the distinction between sexual harassment and harassment based on sex. Both are actionable. The elements of the prima facie case identified in *Rennie* apply to situations in which the alleged harassment is *sexual* harassment; the plaintiff in that case complained that a teacher "touched her and stared at her for long periods of time which in turn made her quite nervous." *Rennie,* 3 F.3d at 1103. While aspects of Webster's behavior fall within the framework of the prima facie case for sexual harassment, oth-

ers do not, even though a jury reasonably could conclude that they were abusive, were directed at the plaintiff because of her sex, and created a hostile working environment. As concerns this alleged non-sexual abusive behavior, the Plaintiff need show no more than what is required of a plaintiff in the other Title VII classes (race, color, religion, or national origin) to prevail on her hostile work environment claim. The existence of a hostile work environment depends on an objective and subjective evaluation of the circumstances which, as the Court previously explained, include such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* — U.S. at ——, 114 S.Ct. at 371. Moreover, the harassment must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405. Based on this analysis, the Court finds that genuine issues of material fact remain for the jury as concerns whether the Plaintiff suffered discrimination based on a hostile work environment. Employers who condone or turn their backs on the kind of moronic behavior that the Plaintiff and others allege that Webster engaged in have a heavy price to pay under Title VII.

## C. The Plaintiff's Retaliatory Discharge Claim

The Plaintiff's second claim is that Wert's retaliated against her for complaining about harassment and filing a charge with the EEOC. *See* Complaint, at ¶ 28. Although the Plaintiff does not specify exactly what acts are at issue, the Court construes this claim to include her discharge and not just the harassment that she allegedly was subjected to during the course of her employment. To determine whether a claim for retaliatory discharge under Title VII passes muster, the Court must first evaluate the sufficiency of the evidence according to the well-established standards that are employed in such cases.

A plaintiff alleging a violation of Title VII must demonstrate that she has been the victim of intentional discrimination, *see Friedel v. City of Madison,* 832 F.2d 965, 971–72 (7th Cir.1987), which she can accomplish in two different ways. First, she can offer direct proof of discrimination. The testimonial evidence that the Plaintiff provided concerning her claim of harassment is an example of this kind of evidence. The second way is to rely on indirect evidence using the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. *See Bruno v. City of Crown Point,* 950 F.2d 355, 361 (7th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992). In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court described the latter framework as follows:

> In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. (footnote omitted). First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.,* at 802; 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804, 93 S.Ct. at 1825.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093.

To assert a prima facie case of retaliatory discharge, the Plaintiff must establish that:

(1) [she] engaged in statutorily protected expression;

(2) [she] suffered an adverse action by [her] employer; and

(3) that there is a causal link between the protected expression and the adverse action.

*Cuevas v. Monroe Street City Club, Inc.*, 752 F.Supp. 1405, 1410 (N.D.Ill.1990), *citing, Jennings v. Tinley Park Community Consolidated School District No. 146*, 796 F.2d 962, 966–67 (7th Cir.1986), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987). If she is unable to establish any one of these elements, then summary judgment in favor of Werts is proper. *See Reed v. AMAX Coal, Co.*, 971 F.2d 1295, 1299 (7th Cir.1992).

■■■■■ If the employer is able to articulate a legitimate, nondiscriminatory reason for the discharge, the next burden a plaintiff bears is to demonstrate that the employer's stated reasons are pretextual. This showing may be made in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. No matter which showing is made, "[t]his burden ... merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* If the employee is able to establish pretext, the trier of fact is then *permitted* to infer the ultimate fact of intentional discrimination; demonstrating that the proffered reasons are a pretext does not compel judgment for the plaintiff, however. *See St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *see generally Hazen Paper Co. v. Biggins*, —— U.S. ——, ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) ("[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employer's age.").

■■■■■ In addition, the employee ultimately must show that the employer's discriminatory intent was the "but for" cause of the adverse action. *See Williams v. Williams Electronics, Inc.* 856 F.2d 920, 923 (7th Cir.1988). Under the "but for" standard of causation:

[I]t is not enough for an employee to show that an employer harbored some discriminatory motivation. Rather, the employee must establish that the discriminatory motivation was a determining factor in the challenged employment decision in that the employee would have received the job absent the discriminatory motivation.

*McQuillen v. Wisconsin Education Association Council*, 830 F.2d 659, 664 (7th Cir. 1987), *cert. denied*, 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

■■■ The Plaintiff has set forth evidence which meets the requirements of the prima facie case for retaliatory discharge. She filed a complaint with the EEOC, she was fired from her job, and her alleged disparate treatment after she complained about the harassment is enough to create a question of fact concerning the existence of a causal link between her protected expression and discharge.

The Defendant argues that the Plaintiff is unable to produce any evidence showing that she was discharged because she complained about harassment. In the Defendant's view, the Plaintiff's absenteeism is a complete defense, which is but another way of saying that she is unable to show that Wert's stated reason for her discharge is nothing more than a pretext. The Plaintiff responds as follows:

[P]laintiff was told by her supervisor who was in charge of her attendance records that she was given another credit point in January, 1992. Plaintiff was also given a paper stating that she had six absences as of January, 1992. Thus, plaintiff was told that she had two credit points as of February, 1992 when she took leave because she was sick. Thus, plaintiff did not violate Article 30 of the Labor Agreement. If there is any dispute about this, it is an issue of fact to be decided by the jury after trial.

Furthermore, after plaintiff filed an EEOC charge, the defendant would not let plaintiff see her attendance records kept by her supervisor, which was retaliation resulting in her discharge.

Additionally, Werts gave plaintiff only one point upon her reinstatement on November 18, 1991, instead of the two points

given to other employees upon reinstatement, because she filed a charge with the EEOC.

Additionally, Werts told plaintiff on November 18, 1991 that she was given only one point because she had been secretly terminated by Werts in 1990. Either the 1990 termination did not occur, and Werts was manufacturing excuses, or Werts did secretly terminate plaintiff in 1990, which was disparate treatment from others who were not opposing the sex harassment.

Additionally, Werts refused to check it's own attendance records on Bilbrey or to listen to her explanation at the time of her termination.

Lastly, Werts destroyed plaintiff's log containing her attendance records and destroyed her personal property.

Plaintiff's Brief, at 20–21. Whether these allegations are true is not for the Court to decide. They are sufficient to create a question of fact for the jury whether the Defendant's stated reason for her discharge is a pretext and whether the Defendant terminated the Plaintiff's employment because she complained about harassment and filed a charge with the EEOC. When ruling on a motion for summary judgment, the Court's duty goes no further.

The stay in this matter is hereby lifted. Only conduct that occurred after November 21, 1991 is actionable under the 1991 Civil Rights Act.

### CONCLUSION

The Defendant's motion for summary judgment is denied.

It is so ORDERED.