Joseph C. GRISWOLD, Plaintiff,

v.

FRESENIUS USA, INC.,
et al., Defendants.

No. 3:96 CV 7241.

United States District Court,
N.D. Ohio,
Western Division.

Sept. 10, 1997.

Thomas A. Sobecki, Toledo, OH, Jane S. Randall, Toledo, OH, for Joseph C. Griswold.

Thomas A. Dixon, Margaret A. Mattimoe, Eastman & Smith, Toledo, OH, Randall S. Feil, Oswald & Feil, Salt Lake City, UT, for Fresenius USA, Inc.

Peter R. Silverman, Shumaker, Loop & Kendrick, Toledo, OH, for Fleetwood Motor Homes of Indiana, Inc.

Janis E. Foley, Cooper, Walinski & Cramer, Toledo, OH, Peter R. Silverman, Emily K. Cooper, Shumaker, Loop & Kendrick, Toledo, OH, John R. Maley, Martin Montes,

Barnes & Thornburg, Indianapolis, IN, for Tom Raper, Inc. and Ganis Credit Corp.

## MEMORANDUM OPINION

(Resolves Doc. Nos. 65, 83 & 99)

KATZ, District Judge.

This matter is before the Court on Defendants' motion for summary judgment, Defendants' motion to strike Plaintiff's corrections to his October 15, 1996 deposition, and Defendants' motion to strike the affidavits of Ravanna Bey, Sr., Rance Crane, Michael Griswold, Joel Hazard, Bradley Kopp, Julian McNeal, David Simpson, and Dale Villareal, and paragraph three of Plaintiff's affidavit. Both motions to strike pertain to evidentiary material Plaintiff has submitted in opposition to Defendants' motion for summary judgment.

For the following reasons, Defendants' motion to strike Plaintiff's corrections to his deposition will be granted. Defendants' motion to strike the aforementioned affidavits will be granted in part and denied in part. Defendants' motion for summary judgment will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

Plaintiff Joseph C. Griswold is a former employee of Defendant Fresenius USA, Inc. ("Fresenius").[1] Plaintiff and Defendant Tracy Kinder worked together under the supervision of Defendant Bill Griswold.[2] Plaintiff alleges that Kinder sexually harassed him, and that Bill Griswold failed to act to remedy the harassment, although he had actual knowledge of the situation. Plaintiff alleges further that he was terminated in retaliation for his complaints of sexual harassment, and in retaliation for complaining that Fresenius had produced and shipped defective and dangerous products.

Plaintiff brought an eight-count amended complaint on the above allegations. In Count I he alleges sex discrimination in violation of federal law. In Count II he alleges retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964. In Counts III and IV he alleges sex harassment under Ohio law. In Count V he alleges discharge in violation of Ohio public policy. In Count VI he alleges negligent infliction of emotional distress. In Count VII he alleges intentional or reckless infliction of emotional distress. And in Count VIII he alleges a negligent or intentional failure to provide a safe work environment.

By Memorandum Opinion and Judgment entered on February 20, 1997, this Court dismissed Counts I and II against individual Defendants Kinder and Griswold; and Counts V, VI and VIII, insofar as Count VIII alleged an intentional failure to provide a safe work environment, against all Defendants. Remaining in the case for further disposition are Counts I and II against Defendant Fresenius, and Counts III, IV, VII and VIII, insofar as Count VIII alleges a negligent failure to provide a safe work environment.

Defendants have moved for summary judgment on all counts, and have filed two separate motions to strike certain of the documents Plaintiff has submitted in support of his opposition to Defendants' motion. The Court addresses the parties' contentions below.

## II. MOTIONS TO STRIKE

### A. Motion to Strike Plaintiff's Corrections to His October 15, 1996 Deposition

■ Defendants have moved to strike six pages of correction sheets Plaintiff made to his October 15, 1996 deposition and filed with the Court on April 4, 1997 (Doc. No. 73) along with other amended responses to discovery. Defendants base their motion to strike on several grounds: (1) Plaintiff had already signed his deposition on November 22, 1996 and may not reopen it at this late date; (2) Plaintiff's attempt to amend his deposition is time-barred by the thirty-day limitation of Fed.R.Civ.P. 30(e); (3) Plaintiff failed adequately to justify the changes he attempts to make; and (4) as a substantive matter, the changes Plaintiff styles as "cor-

---

**1.** Fresenius has been known as Fresenius Medical Care since the fall of 1996.

**2.** Plaintiff Joseph Griswold and Defendant Bill Griswold are not related.

rections" are more in the nature of a re-write than corrections, and a deposition is not a take-home examination.

Plaintiff responds that his amended testimony is mere supplementation of Defendants' discovery requests, and is permitted under Fed.R.Civ.P. 26(e).

Defendants are correct. Rule 26(e), which creates a duty seasonably to amend interrogatories, requests for production, and requests for admission, neither requires nor authorizes a deponent to amend his deposition. Rule 30(e) permits a deponent to amend his deposition only within thirty days after receiving notice that the transcript is available; that date has passed with respect to the deposition at issue. Therefore, Plaintiff's corrections to his October 15, 1996 deposition must be stricken.

### B. Motion to Strike Affidavits

Defendants have also moved to strike the affidavits of Ravanna Bey, Sr., Rance Crane, Michael Griswold, Joel Hazard, Bradley Kopp, Julian McNeal, David Simpson, and Dale Villareal, which Plaintiff has filed in support of his opposition to Defendants' motion for summary judgment. The ground for such motion is that those affidavits are "riddled with hearsay, rumor, and conclusory allegations," and therefore inadmissible. Defendants object specifically to affiants' statements that Defendant Tracy Kinder "comes across" as homosexual or bisexual; descriptions of the circumstances surrounding Plaintiff's termination; and affiants' reports of statements Plaintiff Joseph Griswold made to them about various matters. Defendants have also moved to strike Paragraph three of Plaintiff's affidavit.

■ The Court finds that the affiants' description of Kinder's behavior is admissible. While Kinder's propensity to engage in stereotypical "homosexual" behaviors may indicate little or nothing about his true sexual orientation, most lay people are familiar with the social import of certain gestures, speech patterns, and styles of walking and standing, and are competent to give opinions about whether a given individual engages in stereotypical "homosexual" behavior, and thus "comes across" as homosexual or bisexual Their factual descriptions of Kinder's behavior, of which they have personal knowledge, are certainly admissible.

■ Affiants' conjecture regarding the reasons for Plaintiff's termination is not admissible, and must be stricken. Affiants' factual statements concerning Plaintiff's termination are admissible to the extent that they are made on personal knowledge.

■ Affiants' reports of statements Plaintiff Joseph Griswold made to them about various matters, including Kinder's treatment of him, are admissible. It is true that many of those reports contain hearsay statements, which may not be used to prove the truth of the matters asserted therein. However, all of those statements are relevant and may be used to show that Griswold was complaining about the treatment he was receiving long before his termination. Thus, they are admissible not for the truth of the assertions, but for the fact they were articulated. Many of the hearsay statements are also admissible under exceptions to the hearsay rule, such as statements of the declarant's mental, emotional, or physical condition. Those statements will not be stricken.

■ Paragraph three of Plaintiff's affidavit is admissible. Defendants' contention that a party cannot create an issue of fact by filing an affidavit which contradicts his prior deposition testimony is a correct legal statement, but does not control disposition of this issue. Although the matter contained in ¶ 3 is absent from Plaintiff's deposition, it does not contradict any statement contained in that deposition, and the deposition contains much other matter that is consistent with it. That paragraph will not be stricken.

Accordingly, Defendants' motion to strike is granted as to affiants' conjecture concerning the circumstances surrounding Plaintiff's termination, and denied as to all other matter.

Having determined the admissibility of the various documents submitted in support of and opposition to Defendants' motion for summary judgment, the Court proceeds to review the factual background underlying Plaintiff's claim. The parties' descriptions of

the events giving rise to this suit vary considerably. On Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to Plaintiff.

### III. FACTUAL BACKGROUND

Defendant Fresenius manufactures saline solutions used in hemodialysis. Plaintiff was employed as a quality control laboratory technician in Fresenius' Maumee, Ohio facility from August, 1992 until his termination on January 28, 1994. For most of the time Plaintiff worked at Fresenius, his immediate supervisor was Amanda Kinder, who is the wife of Defendant Tracy Kinder. Both Tracy and Amanda Kinder were shift supervisors, and reported directly to Defendant Bill Griswold, who was the site manager. Tracy Kinder was never Plaintiff's official supervisor, but there were occasions on which Tracy Kinder supervised Plaintiff's work. Bill Griswold was supervised by Glenn Slater.

Plaintiff and Amanda Kinder did not get along. Plaintiff states that Ms. Kinder was the primary cause of the friction between them. Virtually every other Fresenius employee indicates that both parties were equally at fault in the relationship. It is clear from the record that Plaintiff believed Ms. Kinder was incompetent and lazy, and that she improperly approved unsafe batches of saline solution for distribution. Ms. Kinder held substantially the same opinion of Plaintiff as he had of her.

Throughout Plaintiff's tenure at Fresenius, Defendant Tracy Kinder engaged in a number of behaviors with sexual overtones that Plaintiff found objectionable. First, Kinder frequently touched male employees in arguably sexual ways. On a daily basis, he pinched, poked, and squeezed male employees' breasts, particularly in the nipple area; put his arm around their shoulders in a sexually suggestive manner; rubbed their backs in a sexually provocative way; and grabbed, pinched and patted their buttocks. Plaintiff has testified, as have six other former [3] Fresenius employees, that Kinder's behavior was targeted at males. They have identified employees Joseph Griswold, Rance Crane, "Little Joe" Flores, Pierre Gosset, Kevin Hill, Dan Jackson, Nat Johnson, Curtis Lowe, Dave Simpson, and Marquis Stewart as being the objects of Kinder's behavior. They have testified that Kinder touched females less than he touched males, and that he did not touch female employees in a sexual manner.

Supervisor Glenn Slater has testified that he received complaints from both male and female employees that Tracy Kinder was touching them inappropriately. Female employee Karen Frutinger complained in May, 1994 that Kinder had touched her inappropriately, and Kinder was disciplined. Frank Crossgrove stated at his deposition that he thought another female employee, Tracy Reckner Harris, had complained about inappropriate touching, but he was not sure. Employee Rance Crane has testified that the common perception at Fresenius was that if a woman complained about sex harassment, it was taken seriously, while if a man complained, nothing was done.

Tracy Kinder has stated that his physical contact with male employees consisted only of back-slapping and horseplay. Tracy Kinder, along with Amanda Kinder and Frank Crossgrove, has testified that physical horseplay was common, widespread behavior at Fresenius, and that many other employees, including Plaintiff, engaged in it. Plaintiff and several other Fresenius employees have testified that they did not perceive Kinder's touching as mere horseplay, and that other employees did not engage in that sort of behavior.

The second objectionable aspect of Tracy Kinder's behavior was his habit of engaging, on a daily basis, in stereotypical homosexual behavior, such as walking effeminately and making limp-wristed swats in the air. Again, Tracy Kinder and some others have testified that he is strictly heterosexual, and such behavior was commonplace horseplay at Fresenius. Plaintiff and several others have testified that Kinder's behavior was not commonplace, and that their own horseplay was limited to throwing a Frisbee during their

---

**3.** The Maumee facility is no longer in operation. Most of the former employees lost their jobs when the Maumee facility closed, although a few were terminated for other reasons.

breaks. Several employees have testified that rumors and speculation about Kinder's sexual orientation abounded.

The third objectionable aspect of Tracy Kinder's behavior was his penchant for telling dirty jokes and "propositioning" male employees or taunting them with sexual comments. The comments included such statements as: "cutie pie," "honey," "sexy," "you have a sexy ass," "you should have been a prostitute," "you could be my extra lover," "give me a kiss," and "let's tie Joe up and rape him." As is true with regard to the nonverbal behavior, Kinder and some employees have testified that Kinder's behavior was mere horseplay, and Plaintiff and some other employees have testified that it was not. Julian McNeal has testified that several employees complained, but it was widely perceived as useless to go to Bill Griswold, because Griswold and Kinder were friends. David Simpson has testified that he complained to Bill Griswold about Kinder's lewd comments, and that. Griswold ignored his complaints. Plaintiff has testified that he complained both to Bill Griswold and to Glenn Slater about Kinder's conduct, and that both supervisors ridiculed him and disregarded his complaints. Griswold and Slater deny that the alleged conversations took place; Dale Villareal has testified that Bill Griswold told him that Plaintiff had complained about Kinder.

Tracy Kinder apparently never made any sexual comments to female employees.

In summary, viewing the evidence in a light most favorable to Plaintiff, the Court takes as true for purposes of this motion that Defendant Tracy Kinder engaged in a regular pattern of physically accosting male, but not female, employees in a sexual manner by fondling their breasts, shoulders and buttocks; engaged in stereotypical homosexual nonverbal behaviors; and "propositioned" male employees and subjected them to lewd comments; and that such behavior was neither commonplace horseplay nor perceived as such by the targets of Kinder's behavior. The Court further takes as true for purposes of this motion the allegations that Bill Griswold and Glenn Slater received and disregarded multiple complaints about Kinder's behavior.

The parties' disagreement about the events giving rise to this suit does not end with their dispute about Tracy Kinder's behavior. They also disagree about what sort of boss Bill Griswold was. Everyone agrees that Bill Griswold frequently yelled at male employees and was a hard taskmaster as to them. The employees are evenly divided, however, on the issue of whether Griswold ever verbally abused female employees or was harsh with them: some say that he yelled at male and female employees equally; others say that he was harsh with male employees and lenient with female employees. For purposes of this motion, the Court must accept Plaintiff's allegation that Bill Griswold was harder on male subordinates than on female subordinates.

A third area of disagreement concerns Plaintiff Joseph Griswold's behavior on the job. Both sides agree that Plaintiff's performance as a laboratory technician was unobjectionable. They disagree about Plaintiff's emotional stability. Tracy Kinder has testified that Plaintiff was prone to violent mood swings. Defendants have also submitted a written statement from a co-worker, Bradley Kopp, in which Kopp states that Plaintiff was prone to violent mood swings. Kopp has submitted an affidavit stating that the written statement is untrue, and that he signed it under pressure from his superiors at Fresenius because he feared for his job. Several of Plaintiff's colleagues have submitted affidavits stating that Plaintiff is even-tempered, and that they have never seen him lose his temper.

In October, 1993, Plaintiff was involved in an altercation with another employee, Frank Crossgrove. Each participant blames the other for instigating the fight. They agree that Crossgrove told Plaintiff he needed a "blow job." Crossgrove says he was joking. Plaintiff says that Crossgrove's tone of voice was nasty and spiteful. The quarrel escalated, there was yelling, and Plaintiff shoved Crossgrove to the ground.

In November, 1993, Deborah Siena replaced Amanda Kinder as Plaintiff's shift supervisor, and Kinder became a laboratory technician. Plaintiff has testified that short-

ly before Siena replaced Kinder, Bill Griswold attempted to oust Plaintiff from the laboratory and have him demoted to the production floor. Plaintiff also states that Bill Griswold had decided as early as November, 1993 to terminate him in retaliation for Plaintiff's complaints about Tracy Kinder's behavior.

Plaintiff was terminated from his employment with Fresenius on January 28, 1994. That evening at about 9:00, an employee named Derek Bobo brought Plaintiff a high-priority tank sample for testing, and Plaintiff told Bobo it would take about half an hour before the results would be ready. Another employee, Pierre Gosset, then telephoned Bill Griswold at home to complain about the delay. Bill Griswold then talked with Plaintiff on the telephone to ask him whether there were any problems with the equipment that would cause the delay. The parties' versions of what happened next differ diametrically. Bill Griswold says that Plaintiff immediately took offense and began yelling and swearing at him. He says that Plaintiff continued to yell obscenities, despite repeated warnings to calm down, until Griswold finally terminated him for insubordination. Plaintiff denies that he was insubordinate. He says that he did not begin yelling and swearing until *after* Griswold fired him. Again, for purposes of this motion, the Court accepts as true Plaintiff's statement that he remained calm until after Bill Griswold flew off the handle and fired him.

The Fresenius executives who have filed affidavits in this case have all testified that they understood Plaintiff was fired for insubordination.

Plaintiff was replaced by four female employees after his termination. Four replacements were necessary because of an expansion at Fresenius coincident to Plaintiff's termination.

Plaintiff brought an eight-count amended complaint on the events described above. Some of those counts were previously dismissed in *toto* or in part by Memorandum Opinion and Judgment entered on February 20, 1997. Remaining in the case for further disposition are the following Count I—sex discrimination in violation of federal law, against Defendant Fresenius; Count II—retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, against Defendant Fresenius; Counts III and IV—sex harassment and retaliatory discharge under Ohio law, against all Defendants; Count VII—intentional or reckless infliction of emotional distress, against all defendants; and Count VIII—negligent failure to provide a safe work environment, against Defendant Fresenius. Defendants have moved for summary judgment on all Counts.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond

the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## B. Counts I, III and IV: Sex Discrimination

In Counts I, III and IV of his complaint, Plaintiff alleges that Defendants discriminated against him on the basis of his sex, in violation of federal and state antidiscrimination law. Specifically, Plaintiff alleges that Defendant Kinder sexually harassed him, and that Defendants Bill Griswold and Fresenius failed adequately to investigate and/or deal with the harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), and analogous Ohio state law, Ohio Rev.Code § 4112.02(A). He also alleges that Defendant Bill Griswold discriminated against him on the basis of his sex.

### 1. Legal Standard for Showing Sexual Harassment

It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1).

It is unlawful under Ohio law "[f]or any employer, because of the ... sex ... of any person ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown.

*Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164, 1167 (1991), *cert. denied,* 503 U.S. 906 112 S.Ct. 1263, 117 L.Ed.2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n,* 99 Ohio App.3d 557, 562, 651 N.E.2d 440, 444 (1994); *Twinsburg City Schools v. Ohio Civil Rights Comm'n,* 86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593 (1993). Accordingly, the Court uses the same analysis to address Plaintiff's federal and state discrimination claims.

Two types of sexual harassment are recognized in the case law: (1) *quid pro quo* harassment, in which the employee's submission to sexual advances is an express or implied condition for receiving job benefits; and (2) hostile environment discrimination, in which the employee is subjected to offensive, sex-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment. *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 182, 186 (6th Cir.1992). A claim for same-sex sexual harassment is cognizable under Title VII. *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 443 (1997).[4]

Plaintiff alleges that he was subjected to a hostile environment because of Kinder's harassment. A hostile work environment exists whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Conduct that is "merely offensive" but "not severe or pervasive enough to create an objectively hostile or abusive work environment" does not violate Title VII, but the plaintiff need not show that the conduct of which he complains was of such severity that it would be

---

**4.** The Supreme Court recently granted *certiorari* on this issue to resolve a split among the Circuits. *Oncale v. Sundowner Offshore Servs.,* *Inc.,* —— U.S. ——, 117 S.Ct. 2430, 138 L.Ed.2d 192 (1997), reviewing 83 F.3d 118 (5th Cir. 1996).

psychologically injurious to a reasonable person. *Id.* at 20–24, 114 S.Ct. at 370–71. In hostile environment cases, the employer can escape respondeat superior liability if it can show that it responded adequately and effectively once it had notice of the harassment. *Kauffman,* 970 F.2d at 184.

### 2. *Cognizableness of Claims for Same–Sex Sexual Harassment*

In support of their motion for summary judgment on Plaintiff's sexual harassment claims, Defendants first argue that Plaintiff cannot bring a claim for same-sex hostile environment harassment where the harasser is heterosexual, and all of the admissible record evidence indicates that Defendant Kinder is heterosexual.

The Sixth Circuit has never addressed this issue. In *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 448 (1997), the Sixth Circuit held that a male employee may bring a claim of hostile environment sexual harassment if a homosexual male coworker propositions him because of sexual attraction, but expressly declined to decide whether same-sex sexual harassment is actionable *only* when the harasser is a homosexual. Two other Circuit Courts have addressed the issue, and they have come to differing conclusions.

The Fourth Circuit, in a two-opinion series, has held that a plaintiff may bring a claim for same-sex hostile environment sexual harassment against a homosexual harasser, but not against a heterosexual harasser. The first of these cases, *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191 (4th Cir.), *cert. denied,* ── U.S. ──, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996), involved allegations by an automobile mechanic that his coworkers repeatedly teased him about his sexual activities and exposed themselves to him, a coworker placed a condom in his food on one occasion, and a different coworker fondled him on another occasion. The Fourth Circuit held that a sexual harassment claim did not lie where both the alleged harassers and the victim were heterosexuals of the same sex, because:

> we do not believe that in common understanding the kind of shameful heterosexual-male-on-heterosexual-male conduct alleged here (nor comparable female-on-female conduct) is considered to be "because of the target's *sex.*" Perhaps "because of" the victim's known or believed prudery, or shyness, or other form of vulnerability to sexually-focussed speech or conduct. Perhaps "because of" the perpetrators' own sexual perversion, or obsession, or insecurity. Certainly, "because of" their vulgarity and insensitivity and meanness of spirit. But not specifically "because of" the victim's *sex.*
>
> ... [T]o interpret Title VII to reach that conduct when only heterosexual males are involved as harasser and victim would be to extend this vital statute's protections beyond intentional discrimination "because of" the offended worker's "sex" to unmanageably broad protection of the sensibilities of workers simply "in matters of sex." ... There perhaps "ought to be a law against" such puerile and repulsive workplace behavior even when it involves only heterosexual workers of the same sex, in order to protect the victims against its indignities and debilitations, but we conclude that Title VII is not that law.

*Id.* at 1196–96 (emphases in original).

Ten months subsequent to *McWilliams,* the Fourth Circuit again addressed the issue of same-sex sexual harassment in *Wrightson v. Pizza Hut of Am.,* 99 F.3d 138 (4th Cir. 1996). The plaintiff in *Wrightson* was a heterosexual male waiter who alleged that he had been sexually harassed by a homosexual supervisor and five homosexual coworkers. The harassment consisted of almost daily sexual propositions, graphic descriptions of homosexual sex, and frottage and other inappropriate sexual touching. The Fourth Circuit held that a Title VII claim for same-sex hostile environment harassment is cognizable where the perpetrator of the sexual harassment is homosexual. They stated in *Wrightson* that:

> Title VII broadly prohibits "employers" (whether male or female) from discriminating against "individual" employees (whether they be male or female) on the basis of the latter's "sex," or gender. Through its proscription of "employer" discrimination

against "individual" employees, the statute obviously places no gender limitation whatsoever on the perpetrator or the target of the harassment. Therefore, the only possible source of a condition that the harasser and victim be of different sexes is Title VII's causal requirement that the discrimination be "because of" the employee's sex. In this causal requirement we find no such limitation either.

An employee is harassed or otherwise discriminated against "because of" his or her sex if, "but-for" the employee's sex, he or she would not have been the victim of the discrimination. As a matter both of textual interpretation and simple logic, an employer of either sex can discriminate against his or her employees of the same sex because of their sex, just as he or she may discriminate against employees of the opposite sex because of their sex.

*Id.* at 142 (internal citations omitted).

The Eighth Circuit, on the other hand, has held that an employee may bring a same-sex hostile environment sexual harassment claim even where both the harasser and the victim are heterosexual, as long as the harasser's conduct was based on the victim's sex. The plaintiff in *Quick v. Donaldson Co.,* 90 F.3d 1372 (8th Cir.1996), was a welder in a muffler production plant where many employees regularly engaged in an activity known as "bagging." "Bagging" was variously defined in the record as "grabbing and squeezing another person's testicles," "making a feinting motion with the hand towards a man's genital area to startle him," "hitting another's testicles," and "snapping someone in the groin area." The plaintiff alleged that he was "bagged" some 100 times over a two-year period.

In holding that the plaintiff had stated an actionable claim for sexual harassment, the Eighth Circuit first cited the Supreme Court's statement that "the broad rule of workplace equality under Title VII strikes 'at the entire spectrum of disparate treatment of men and women in employment' in order to provide a workplace free of 'discriminatory intimidation, ridicule and insult,' " 90 F.3d at 1377 (citing *Harris,* 510 U.S. at 20–22, 114 S.Ct. at 370), and then went on to hold that:

Congress intended to define discrimination in the broadest possible terms, so it did not enumerate specific discriminatory practices nor elucidate the parameter of such nefarious activities.

\* \* \* \* \* \*

Although there is little legislative history as to what discrimination "based on sex" means, the key inquiry is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment.

*Id.* at 1377–78 (internal quotes and citations omitted).

This Court agrees with the Eighth Circuit that same-sex hostile environment sexual harassment is actionable under Title VII, regardless of whether the harasser is homosexual. Defendants, as well as others who have argued that there can be no "sexual harassment" in the absence of sexual attraction, ignore completely the possibility that an employee may suffer harassment based on sex that is motivated by pure misanthropy or misogyny. Title VII prohibits discrimination in *all* its forms, and its prohibition on sex discrimination is not limited to discrimination in the form of unwanted sexual advances committed by an individual who is actually serious.

An extreme hypothetical may elucidate this point. Suppose that a supervisor lets it be known that she hates all members of her sex. Every day, she approaches her one female subordinate and says, "I hate you. I hate all women. I hate you because you are a woman." The supervisor also subjects the female subordinate to a regular regimen of insults, derogatory language and invective, smears dog feces around her work station, and spams her e-mail. There is no question that the subordinate would have a claim for hostile environment harassment if such harassment were based on the subordinate's race, color, religion, national origin, age, or disability. The standard for sex discrimina-

tion is the same under the plain language of the statute. "That the focus of the discrimination has shifted from race, color, or nationality to gender is of no consequence; an employer who is abusive towards men or women because of their sex is every bit as culpable under Title VII as the ... racist." *Bilbrey v. Werts Novelty Co.*, 881 F.Supp. 370, 375 (S.D.Ind.1994).

This view also comports with the Equal Employment Opportunity Commission's ("EEOC") understanding of sexual harassment. The EEOC Compliance Manual states that "the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex." EEOC Compliance Manual, § 615.2(b)(3) (quoted with approval in *Yeary*, 107 F.3d at 446); *see also Harris*, 510 U.S. at 24–26, 114 S.Ct. at 372 (Ginsburg, J., concurring) ("key inquiry is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed").

With all due respect to the Fourth Circuit panel that decided *McWilliams*, this Court believes that case is a classic example of the old adage that "easy cases make bad law." The *McWilliams* plaintiff was more a victim of a general locker-room workplace atmosphere than harassment based on his sex. The Fourth Circuit's opinion in that case evinces less concern with the statutory language of Title VII than their concern with a "parade of horribles" that they feared might occur if they permitted a claim for hostile environment sexual harassment to go forward when the harasser is a heterosexual member of the victim's sex: they feared that permitting such causes of action would open the floodgates to discrimination suits brought by individuals who have been treated unfairly, but not discriminatorily, by their employers. Obviously, Title VII does not address unfair treatment in the workplace, as long as that unfair treatment occurs on a nondiscriminatory basis.

That concern is legitimate, and should not be minimized. One necessary effect of permitting claims for male-against-male and female-against-female sex harassment to proceed is that the rule effectively makes every employee in the country a member of a "protected class" for Title VII purposes. Left unchecked, that rule creates a danger that the Federal Courts will be deluged with frivolous claims of discrimination. Over forty years ago, Justice Jackson expressed just that concern in a different context, with regard to the increasing number of federal habeas corpus petitions: "It must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537, 73 S.Ct. 397, 425, 97 L.Ed. 469 (1953) (Jackson, J., concurring in result).

This Court believes, however, that the speculative risk that a deluge of frivolous claims may be brought does not justify ignoring the plain language of Title VII. While affording the Plaintiff a remedy can be viewed as opening the door to "unmanageably broad protection of the sensibilities of workers simply in matters of sex," *McWilliams*, 72 F.3d at 1196, that risk must be balanced against the right of the individual worker to be free from harassment based on sex, whatever the sexual orientation of the parties involved. The risk of abuse which could result from the granting of a remedy under Title VII for same-sex sexual harassment involving either homosexual or heterosexual actors must be viewed in light of the traditional responsibility of judges and juries to distinguish those abusing the system from those properly seeking protection under the system.

That risk can effectively be constrained by requiring a plaintiff seeking to bring a same-sex sexual harassment claim against a heterosexual harasser to overcome a presumption that individuals are not ordinarily prejudiced against members of demographic groups to which they themselves belong. The Sixth Circuit has held in other contexts that where the plaintiff is a male employee working in a male-dominated field, he bears a heightened burden of showing that he was intentionally discriminated against despite his majority status. *See Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985). In such cases, he must show both (1) back-

ground circumstances to support the suspicion that the defendant is an unusual employer who discriminates against the offended demographic group, and (2) that the employer gave favorable treatment to similarly situated employees who were not members of the protected group. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994). This standard should apply in same-sex sexual harassment cases as well as reverse discrimination actions generally.[5]

### 3. Standard for Bringing Same–Sex Sexual Harassment Claims

█ Based on the foregoing, the Court holds that an employee seeking to bring a claim for hostile environment sexual harassment against a same-sex harasser must show: (1) that the alleged harasser is an unusual actor who discriminates against his or her own sex; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and (5) with respect to a claim against an employer, the existence of respondeat superior liability. *See Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 619–20 (6th Cir.1986), *abrogated on other grounds in Harris, supra*.

### a. Defendant Tracy Kinder

█ Plaintiff alleges that Defendant Tracy Kinder discriminated against him on the basis of his sex by engaging in inappropriate touching, stereotypical homosexual nonverbal behavior, and by verbally propositioning him and subjecting him to lewd comments.

### i. Harasser Is an Unusual Actor

As to the first prong of the test, the Court finds that Plaintiff has shown that a triable issue of fact exists on whether Tracy Kinder was an unusual worker who discriminated

against other men. The record contains a substantial amount of evidence, both from Plaintiff and from other former employees, that Tracy Kinder, regardless of what his true sexual preference may be, habitually assumed a stereotyped homosexual persona in the workplace and targeted sexual behaviors towards male employees in ways that he did not target female employees.

### ii. Unwelcome Sexual Harassment

As to the second prong, Plaintiff has shown that a triable issue of fact exists on whether the conduct complained of was unwelcome. Defendants argue that Tracy Kinder's actions were mere horseplay or joking in which Plaintiff himself participated. Defendants appear to have overlooked entirely the seven affidavits from former employees stating that they did not view Kinder's actions as horseplay or joking, and that Plaintiff did not participate in such conduct. Defendants have also overlooked several statements from their own witnesses indicating that there had been complaints about Kinder's behavior. These affidavits and statements raise significant factual issues for a jury.

### iii. Harassment Based upon Sex

As to the third prong, Plaintiff has shown that a triable issue of fact exists on whether the conduct he complains of was based on his sex. As discussed above, Plaintiff need not show that Tracy Kinder was actually sexually attracted to him in order to meet this prong. "The key inquiry is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris,* 510 U.S. at 25, 114 S.Ct. at 372 (Ginsburg, J., concurring). Plaintiff has presented more than a scintilla of evidence that Tracy Kinder exposed male employees to his sexual advances, and did not expose female employees to those same advances.

---

5. This standard can be applied in all same-sex sexual harassment cases, regardless of whether the alleged harasser is heterosexual or homosexual. In cases where the harassing conduct consists of sexual advances, a showing that the harasser is homosexual will satisfy the requirement that background circumstances support the suspicion that the defendant is an unusual actor who discriminates against the majority.

iv. *Intimidating, Hostile, or Offensive Working Environment*

 As to the fourth prong, Plaintiff has shown that a triable issue of fact exists on whether the conduct he complains of was sufficiently pervasive to create an intimidating, hostile, or offensive working environment. Defendants argue that Plaintiff cannot meet this prong because he has not shown that Tracy Kinder's conduct unreasonably interfered with his work performance and seriously affected his psychological well being, as the Sixth Circuit required in *Rabidue.* 805 F.2d at 619–20.

Defendants' contention is meritless. The Supreme Court expressly rejected that portion of *Rabidue* in *Harris.* It is no longer good law. In rejecting that portion of *Rabidue,* the Court stated:

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers.
>
> \* \* \* \* \* \*
>
> Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious.

*Harris,* 510 U.S. at 22, 114 S.Ct. at 370–71.

Whether discriminatory conduct is sufficiently pervasive to create a hostile environment is determined by looking at all the circumstances. These may include:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening and humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.

*Id.* at 17, 114 S.Ct. at 367.

Looking at the totality of the circumstances in this case, the Court notes that Plaintiff has alleged discriminatory conduct that took place on a daily basis. He has alleged conduct of moderate severity—inappropriate touching and verbal behavior, but no serious sexual assaults or injurious contact aside from some pinching. He has alleged that his physical autonomy was threatened. And he claims that the environment affected his work performance by making it more difficult for him to do his job.

 Defendants have also attempted to argue that Plaintiff cannot show Tracy Kinder's conduct unreasonably interfered with Plaintiff's work performance because his job performance remained satisfactory throughout his tenure at Fresenius. "In establishing the requisite adverse effect on work performance, however, the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job." *Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir.1988). A reasonable jury could find that being groped on an almost daily basis would make it difficult for an employee to do his job. Plaintiff has provided more than a scintilla of evidence that he was subjected to an intimidating, hostile, or offensive working environment.

v. *Respondeat Superior Liability*

 As to the fifth prong, Plaintiff has shown that a triable issue of fact exists on whether Fresenius is liable for Kinder's conduct. Where an employee alleges that a coworker sexually harassed him and subjected him to a hostile environment, the employer is liable for the supervisor's conduct if it knew or should have known of the supervisor's conduct, but can escape respondeat superior liability if it can show that it responded adequately and effectively once it had notice of the harassment. *Kauffman,* 970 F.2d at 183–84.

In this case, there is more than enough evidence that Fresenius knew or should have known that Kinder was touching and verbally assaulting male employees on a regular basis to enable Plaintiff to survive a motion for summary judgment. The conduct was pervasive, occurring on a daily basis, and virtually every Fresenius employee who has provided evidence in this case claims personal knowledge of Kinder's conduct. Also, there is evidence that several employees made complaints about Kinder's behavior to Fresenius' upper management.

The evidence further supports Plaintiff's contention that Fresenius failed to respond at all—let alone adequately or effectively—to complaints about Kinder's behavior when those complaints were made by male employees.

Defendants' motion for summary judgment must be denied as to Plaintiff's claims arising out of Defendant Tracy Kinder's behavior.

### b. *Defendant Bill Griswold*

 Plaintiff alleges that Defendant Bill Griswold discriminated against him on the basis of his sex by yelling and swearing at him in the workplace, when he did not yell or swear at female employees. Defendants respond that Griswold's behavior was not based on sex, and further argue that Griswold's behavior does not rise to the level of severity and pervasiveness required to maintain a claim under Title VII. The Court agrees with Defendants' second contention. The little evidence has been presented concerning the frequency and severity of Bill Griswold's conduct indicates that it was neither severe nor pervasive enough to create an abusive environment. As to frequency, Plaintiff mentions only about half a dozen specific incidents of verbal invective occurring over a two-year period, although the record leaves one with the impression that Bill Griswold lost his temper more often than once every four months. As to severity, Plaintiff alleges that Bill Griswold called him a "pig" and a "hog," and threatened to "kick his ass." While those insults are certainly unpleasant, they do not rise to the level of severity required to sustain a Title VII action. Defendants' motion for summary judgment

must be granted as to Plaintiff's claims arising out of Defendant Bill Griswold's behavior.

### 4. *Summary*

Defendants' motion for summary judgment must be denied as to Plaintiff's claims arising out of Defendant Tracy Kinder's behavior and granted as to Plaintiff's claims arising out of Defendant Bill Griswold's behavior.

### C. *Counts II and IV, Retaliatory Discharge*

In Counts II and IV of his complaint, Plaintiff alleges that Defendants terminated his employment in retaliation for his complaints about Tracy Kinder's conduct, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), and analogous Ohio state law, Ohio Rev.Code § 4112.02(I).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). A plaintiff establishes a prima facie case of retaliation by showing:

(1) that he engaged in an activity protected by Title VII;

(2) that the defendant knew of the plaintiff's exercise of his civil rights;

(3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and

(4) that there was a causal connection between the protected activity and the adverse employment action.

*Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.*, 80 F.3d 1107, 1118 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996); *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 877 (6th Cir.1991); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987). Once the plaintiff establishes a prima facie case of retaliation, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Cani-*

*tia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990). The burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.*

■ In this case, Plaintiff has provided evidence that he engaged in an activity protected by Title VII by complaining to Bill Griswold and Glenn Slater; that Defendants knew of Plaintiff's complaints; and that, thereafter, Plaintiff was terminated from his employment. Thus, the only issue before the Court on these Counts is whether Plaintiff has provided evidence, sufficient to survive a motion for summary judgment, that there was a causal connection between the protected activity and the adverse employment action.

■ Contrary to Plaintiff's assertions, mere proximity in time between the protected activity and the discharge is not enough, standing alone, to support a finding that the adverse employment decision was in retaliation for the discrimination claim. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir.1989); *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 197 (6th Cir.1986); *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir.1986). Plaintiff alleges that he has shown more than mere proximity in time, however, because he has provided evidence that: Defendants Griswold and Kinder were friends; Griswold and Slater responded negatively when Plaintiff complained about Kinder's conduct; another employee, Frank Crossgrove, was not disciplined for similar behavior; and Defendants changed their story about the reason for terminating Plaintiff. That is sufficient evidence to create a prima facie case of retaliation.

The burden then shifted to Defendants to articulate a legitimate business reason for terminating Plaintiff. Defendants allege that Plaintiff was terminated for insubordination after he yelled and swore at Bill Griswold. Yelling and profanity is grounds for termination pursuant to the Fresenius employee handbook.

Once Defendants proffered a legitimate reason for terminating Plaintiff—insubordination—the burden shifted back to Plaintiff to demonstrate that the proffered reason is a pretext. In this case, Plaintiff has testified that he was not insubordinate prior to his termination, and thus the factual predicate for an insubordination-based termination is lacking. He says that he never yelled or swore at Bill Griswold until *after* his termination. If Plaintiff was not insubordinate, and this Court must accept for purposes of this motion that he was not, Defendants' articulated reason for terminating Plaintiff is a pretext.

Therefore, Defendants' motion for summary judgment must be denied on Plaintiff's retaliatory discharge claims. .

### D. Count VII: Intentional or Reckless Infliction of Emotional Distress

■ Plaintiff alleges that Bill Griswold's and Tracy Kinder's actions, described above, amount to intentional or reckless infliction of emotional distress. A plaintiff alleges facts sufficient to support a finding of intentional or reckless infliction of emotional distress by alleging that the defendant has engaged in conduct which has been:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts § 46 cmt. d

(1965)); *see also Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 48, 570 N.E.2d 1076, 1083 (1991).

Plaintiff here alleges that Defendant Kinder made sexual comments to Plaintiff such as "give me a kiss" and "you have a sexy ass," touched Plaintiff's chest, sides, and shoulders, put his arm around Plaintiff, and frequently puckered his lips toward Plaintiff. Plaintiff alleges that Defendant Griswold ridiculed Plaintiff and used foul language around him, and falsely subjected Plaintiff to discipline. The facts Plaintiff alleges are insults, indignities and annoyances of the sort to which liability does not extend; they do not rise to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress. Therefore, Defendants' motion for summary judgment must be granted on Plaintiff's claim of intentional or reckless infliction of emotional distress.

### E. Count VIII: Negligent Failure to Provide a Safe Work Environment

 Plaintiff alleges that Defendants failed to provide him a safe work environment because Fresenius permitted Tracy Kinder to harass Plaintiff sexually, and Bill Griswold to yell at Plaintiff and threaten to "kick his ass."

Defendants have moved this Court to reconsider its previous holding that Ohio law recognizes a cause of action for negligent failure to provide a safe work environment in the sexual harassment context. They argue that this holding conflicts with Ohio workers' compensation law, which provides that workers' compensation is the exclusive remedy against employers for non-intentional work-related injuries. Ohio Rev.Code § 4123.74.

The Ohio Supreme Court rejected that precise argument in *Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 575 N.E.2d 428 (Ohio 1991). In holding that the workers' compensation scheme is not the exclusive remedy for claims based upon sexual harassment in the workplace, the court adopted the reasoning that:

workers' compensation is directed essentially at compensating a worker for lost resources and earnings. This is a vastly different concern than is addressed by the

sexual harassment laws. While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem. Workers' compensation addresses purely economic injury; sexual harassment laws are concerned with a much more intangible injury to personal rights.

*Id.* at 490, 575 N.E.2d at 431 (quoting *Byrd v. Richardson–Greenshields Sec., Inc.,* 552 So.2d 1099, 1104 (Fla.1989)). They quoted approvingly language from a Georgia court of appeals that:

A cause of action for *negligence* against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment,

*Id.* at 492, 575 N.E.2d at 433 (quoting *Cox v. Brazo,* 165 Ga.App. 888, 303 S.E.2d 71, 73 (1983), *aff'd,* 251 Ga. 491, 307 S.E.2d 474 (1983) (emphasis added)), and expressly held ·that "where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew *or should have known,* summary judgment may not be granted in favor of the employer." *Id.* at 493, 575 N.E.2d at 433 (emphasis added). This clearly sets forth a negligence standard for failure to provide a safe work environment in the . context of sexual harassment.

Defendants have argued that allowing a claim for negligent failure to provide a safe work environment to go forward will frustrate the entire workers' compensation system because "every time an employee is injured on the job, he or she will have the right to bring a common law cause of action for negligent failure to provide a safe work environment." (Def.'s Br. at 34.) That is not the case. The Ohio Supreme Court recognizes a common law cause of action for negligent failure to provide a safe work environment only in the sexual harassment context, and this Court's research indicates that courts applying Ohio law have construed that cause of action narrowly even within that context.

This Court is bound by the limitations that Ohio courts have placed on that cause of action, as well as Ohio's recognition of that cause of action.

Plaintiff has provided evidence that Tracy Kinder had a past history of sexually harassing behavior and a reputation for sexual harassment, that it was foreseeable that Kinder would engage in sexual harassment of his fellow employees, and that Defendants Griswold and Fresenius had actual knowledge of Kinder's behavior. Defendants' motion for summary judgment must be denied on Plaintiff's claim of negligent failure to provide a safe work environment.

### V. CONCLUSION

For the foregoing reasons, Defendants' motion to strike Plaintiff's corrections to his October 15, 1996 deposition is granted. Defendants' motion to strike the affidavits of Ravanna Bey, Sr., Rance Crane, Michael Griswold, Joel Hazard, Bradley Kopp, Julian McNeal, David Simpson, and Dale Villareal, and paragraph three of Plaintiff's affidavit, is granted as to affiants' conjecture concerning the circumstances surrounding Plaintiff's termination, and denied as to all other matter contained therein.

Defendants' motion for summary judgment is granted as to the sex discrimination claims brought against Bill Griswold, and the claim for intentional or reckless infliction of emotional distress; Defendants' motion is denied as to the sex discrimination claims brought against Tracy Kinder and Fresenius, the retaliatory discharge claims, and the claim for negligent failure to provide a safe work environment.

IT IS SO ORDERED.