. The State of Ohio, Appellee, *v.* Byomin, Appellant.*

(No. 1401—Decided March 19, 1958.)

*Mr. Paul J. Mikus,* prosecuting attorney, and *Mr. Adrian F. Betleski,* for appellee.

*Mr. G. L. Severs* and *Mr. Samuel J. Kailes,* for appellant.

Hunsicker, P. J.  The appellant herein, Walter J. Byomin, was indicted and tried for and convicted of the offense of purposely and willfully taking the life of a police officer of the village of Wellington, Ohio, named Edmund G. Smith, while such officer was in the discharge of his duties.  The statute covering this offense is Section 2901.04, Revised Code, and it reads as follows:

"No person shall purposely and willfully kill a sheriff, deputy sheriff, constable, policeman, or marshal while such sheriff, deputy sheriff, constable, policeman, or marshal is in the discharge of his duties.

"Whoever violates this section is guilty of murder in the first degree and shall be punished by death unless the jury try-

---

*Motion to certify the record overruled, October 8, 1958.  Appeal dismissed, 168 Ohio St., 256.

ing the accused recommends mercy, in which case the punishment shall be imprisonment for life.''

The indictment contained only one count.

Walter J. Byomin now says that the judgment of guilty entered on the verdict of the jury is prejudicially erroneous to his substantial rights in the following respects:

Edmund G. Smith was not a police officer of the village of Wellington at the time he was killed; Edmund G. Smith was not in the discharge of his duties as a police officer at the time he was killed; the court erred in allowing Byomin to be tried before a jury in manacles, thus destroying the presumption of innocence accorded all defendants; the court erred in the introduction of certain exhibits of clothing of the deceased and permitting such clothing to be displayed on a life-sized mannikin; misconduct on the part of the prosecuting attorney; the court erred in permitting the sheriff to testify concerning, and to read to the jury, the signed confession of Byomin; the court erred in refusing to give special written charges before oral argument; error in the court's written charge; ''error on the part of the trial court in permitting newspaper photographers 'carte blanche' in taking photographs of all phases of the trial.''

The appellant says further that, by reason of such errors, the ''(1) verdict and judgment are contrary to law,'' and that ''(2) the verdict is against the manifest weight of the evidence.''

Walter J. Byomin came to the village of Wellington, Lorain County, Ohio, from Cleveland, Ohio, on the afternoon of May 4, 1957, to see a girl friend. At the house where this girl friend was residing, he had an argument with one of the occupants, who refused to permit Byomin to see the girl.

This occupant, a man by the name of Redwine, said he struck Byomin, who then went to his automobile and secured a revolver from the glove compartment of the automobile and returned to the front door of the house. Redwine did not then open the door to the house. In the meantime, the girl friend had gone to a neighbor's home.

The office of the marshal of the village was notified of the breach of the peace then being committed. Edmund G. Smith, the deceased, dressed in a patrolman's uniform and driving a

dark blue automobile conspicuously marked "Police, Wellington, O.," responded to the call. This automobile had a city license and was equipped with a spotlight on each side, a red flasher-light on the top, and a siren horn.

Byomin, in a statement to the sheriff of Lorain County, said that the policeman drove behind him with the siren blowing. Other witnesses testified that Byomin, at a rapid rate of speed, fled from the scene of the commotion at the home of the girl friend, with the police car in hot pursuit.

The Byomin automobile turned into a street that ended in a "T" intersection, where it stopped, with the police car very nearby. Shots were heard by the neighbors who just previously had noticed that a police car was chasing the Byomin car at a rapid rate of speed down their street.

At a distance of more than 250 yards, the neighbors were able to state that one person was a police officer, and that the other person (who later was identified as Byomin) was dressed in civilian clothes.

One neighbor, by use of binoculars, said he saw that the officer did not have a gun in his hand, but that his hands were raised as though to ward off a blow, and that Byomin had a gun in his hand.

Byomin admitted he shot the person who was pursuing him, but that, by reason of the dust, he could not see, and did not know, that he was a police officer.

Even a cursory reading of the bill of exceptions would dispel and make impossible the belief in any such statement as made by Byomin. We have read this bill of exceptions with care and are thus firmly convinced that Byomin knew that a police vehicle was in pursuit of him, and that he sought to escape for many reasons (even to the point of taking the life of his pursuer).

Byomin had no license to drive without another licensed driver with him; he had in his possession a loaded revolver and many extra bullets; he had caused a breach of the peace; by putting the gun "in his belt" and carrying it to the house in a menacing manner, he perhaps could have been charged with a serious offense; he was on probation from a federal penitentiary (the last of a series of places where he had previously been in-

carcerated); and he was driving at a reckless and dangerous rate of speed through the streets of Wellington.

The jury, having all the evidence before it, believed that Edmund G. Smith, the deceased, was an officer acting in the pursuit of his duties, and that Byomin purposely and willfully killed him. The evidence overwhelmingly supports the conclusion reach by the jury. We do not believe that any other conclusion could be reached from this evidence, if Edmund G. Smith was a police officer within the terms of the statute.

We therefore direct our attention to the question of the status of Edmund G. Smith at the time of his death. The evidence shows that Smith was, at the time of his death, a resident of New London, Huron County, Ohio, and not an elector of the village of Wellington. On March 6, 1957, pursuant to authorization by the council of the village of Wellington, the mayor of the village appointed Edmund G. Smith to the police department of the village ''as a patrolman on a six-month probationary period.''

Edmund G. Smith was on duty during the time of the occurrence herein and was dressed in a police officer's uniform, consisting of a dark blue officer-type cap, gray blouse, dark blue coat, and Sam Browne belt. A badge designating him as an officer was on his left side, and a similar badge was above the visor of the cap. His outward appearance and his use of the police automobile gave every external appearance of a duly-authorized police officer.

Section 737.15, Revised Code, in its pertinent part, reads as follows:

''Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village, who is an elector thereof * * *.''

Section 737.16, Revised Code, reads as follows:

''The mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, policemen, night watchmen, and special policemen. All such officers shall continue in office until removed therefrom for the cause and in the manner provided by Section 737.15 of the Revised Code.''

It is to be noticed that there is no provision in this section that the appointees be electors of the village. No other statute that we have found requires a deputy marshal to be an elector. Smith was oppointed under the authority of this section, and named in the ordinance as a "patrolman." There is no designation of "patrolman" in the statute.

It must be concluded herein that Smith was, in fact, appointed under the statute as either a deputy marshal or a policeman. In either event, the statute does not require that he be an elector.

Section 733.68, Revised Code, says:

"Each officer of a municipal corporation, or of any department or board thereof, whether elected or appointed as a substitute for a regular officer, shall be an elector of the municipal corporation, and before entering upon his official duties shall take an oath to support the Constitution of the United States and the Constitution of this state, and an oath that he will faithfully, honestly, and impartially discharge the duties of his office. Such provisions as to official oaths shall extend to deputies, but they need not be electors."

We do not believe this section applies to police officers of a village or to a deputy marshal. The officer designated in this section refers to others than police officers, since the requirements with respect to members of a department of public safety are covered by Chapter 737, Revised Code.

Assuming, however, that Section 733.68, Revised Code, does apply to police officers, there is an express exclusion with respect to the requirements that deputies be electors. Smith, in this case, was only a deputy to the marshal, who by statute is designated a chief of police. Section 737.15, Revised Code.

We therefore conclude that, either under Section 733.68, Revised Code, or under Section 737.16, Revised Code, it was not necessary for Smith to be an elector of the village of Wellington to be a deputy marshal or policeman of such village. He was, consequently, at the time he was killed, a bona fide officer of the village of Wellington, within the terms of Section 2901.04, Revised Code, set out at the beginning of this opinion.

The next question to which we direct our attention concerns the matter of whether Smith, at the time he was killed

by Byomin, was in the discharge of his duties as an officer within the terms of the above Section 2901.04, Revised Code.

Section 737.18, Revised Code, says: ·

"The marshal shall be the peace officer of a village and the executive head, under the mayor, of the police force. The marshal, and the deputy marshals, policemen, or night watchmen under him shall have the powers conferred by law upon police officers in all villages of the state, and such other powers, not inconsistent with the nature of their offices, as are conferred by ordinance."

And Section 737.19, Revised Code, in its pertinent part, says:

"The marshal of a village shall suppress all riots, disturbances, and breaches of the peace, and to that end may call upon the citizens to aid him. He shall arrest all disorderly persons in the village and pursue and arrest any person fleeing from justice in any part of the state. He shall arrest any person in the act of committing any offense against the laws of the state or the ordinances of the village * * *."

We also must refer to the general arrest statute, Section 2935.03, Revised Code, which says, in part:

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained."

It is our conclusion, from a reading of the statutes and the record of this case, that the deputy marshal or police officer, Smith, had the authority and duty to pursue and arrest Byomin, and that, as a deputy of the marshal of the village of Wellington, he was exercising the requirements enjoined upon him by Section 737.19, Revised Code, set out above. A deputy is one who, by appointment, exercises an office or function as though he were the officer himself. Any other conclusion with respect to the work of a village marshal and his deputies does not make sense and is contrary to all reason. See Section 3.06, Revised Code.

We therefore conclude that, at the time Byomin killed Smith, he, Smith, was in the discharge of his duties as an officer within the terms of Section 2901.04, Revised Code.

We have examined all other claimed errors and find none prejudicial to the substantial rights of the appellant.

The judgment of the Court of Common Pleas must be affirmed.

*Judgment affirmed.*

DOYLE and STEVENS, JJ., concur.