865 F.2d 262
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kannas YOUSEF, Plaintiff-Appellant,
v.
BORMAN'S FOODS, INC., Defendant-Appellee.
 No. 88-1006.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1988.
 
 Before KRUPANSKY, Circuit Judge, and GEORGE CLIFTON EDWARDS Jr. and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Kannas Yousef appeals from the order of the district court granting defendant Borman's Inc. a judgment notwithstanding the verdict on his claim for retaliatory discharge brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-3(a) (1982) and Michigan's Elliott-Larsen Act, Mich.Comp.Laws Sec. 37.2701(a) (West 1985).[1] For the following reasons we affirm the judgment of the district court.
 
 I.
 
 2
 Appellant is a Palenstinian national who practices the Muslim religion. Borman's owns and operates a chain of retail grocery stores. From 1975 until his discharge in 1985, appellant worked in a management position in Borman's bakery warehouse. During the first five and a half years of his employment, appellant received several pay raises. From 1981 until 1985 a wage freeze was instituted by Borman's. During this period the only people who received increases in their compensation were employees who were promoted to new positions.
 
 
 3
 In April of 1984, Borman's reorganized the operation of the bakery warehouse. Prior to this time, the warehouse operated on three eight hour shifts. Appellant was the manager of the afternoon shift. Mary Helen Daniels was the manager of the night shift. William Fraki was the manager of the day shift. Borman's decided to discontinue the night shift and operate the warehouse for only eighteen hours a day. Accordingly, Fraki and appellant had their shifts increased by one hour to nine hours plus they were on 24 hour call. After this change in the operation of the warehouse, appellant sought a raise. His request was turned down due to the wage freeze. In October of 1984, appellant sought a meeting with Marvin Berman, Borman's executive vice president and general manager. The meeting could not be arranged.
 
 
 4
 On December 20, 1984, appellant sent the following letter to Berman:
 
 
 5
 It has been approximately seven weeks since our telephone conversation concerning your agreement to schedule a meeting to discuss my wages. To this date it has not been accomplished.
 
 
 6
 I feel that the hours and responsibilities to my work load has increased considerably since, the dismissal of Helen Daniel's, and I should be compensated at a higher rate of pay.
 
 
 7
 I am very aggravated and dissappointed with this situation and believe that I am being ignored.
 
 
 8
 I have given this a considerable amount of thought and have come to the conclusion that my religion as Muslim, or my birthplace of Palestine, might be a factor to this ignorance.
 
 
 9
 I would appreciate a telephone call or a letter, at your convenience, within the near future.
 
 
 10
 Appellant admitted at trial that this was the first time that he had complained to anyone in a position of authority at Borman's that he thought he was the victim of discrimination. Berman did not respond to this letter. On January 28, 1985, appellant sent a letter to Paul Borman, the President of Borman's, in which he made the following statements:
 
 
 11
 Enclosed please find a copy of my letter to Mr. Marv Berman, dated December 20, 1984, with copies to J.R. Smith, Jack Hynes, and Bill Fraki. As yet, I have not received any correspondence.
 
 
 12
 I've tried the alternative, Mr. Marv Berman, with no successful response. Therefore, I am now requesting that you endeavor to give me the courtesy of a reply.
 
 
 13
 On February 4, 1985, appellant filed a charge of discrimination with the Equal Employment Opportunity Commission. He alleged discrimination on the basis of religion and national origin. The alleged acts of discrimination were the company's failure to give him a raise while increasing his workload and making him give three weeks notice when asking for a day off while other employees were not treated in this manner. After receipt of the complaint, Borman's management decided not to meet with appellant but rather to prepare a formal response to the charge.
 
 
 14
 In April of 1985, the wage freeze was lifted. At this time appellant received a raise.
 
 
 15
 In July of 1985, Dell Russell, Borman's Director of Security received an anonymous tip that someone was removing merchandise from the bakery warehouse. Russell then directed a security guard to observe the warehouse on the night of July 26, 1985 and to call if he saw anyone take merchandise out of the warehouse. On that night, the guard observed appellant taking merchandise from the warehouse. Appellant's car was stopped and searched and a cake, four packages of pita bread and three packages of cookies were found. At trial, appellant admitted that the cookies and pita bread were saleable merchandise and that although the icing on the cake had come in contact with the wrapping, it too was saleable merchandise. Following an investigation, appellant was discharged pursuant to a policy to discharge anyone who misappropriates company property. Appellant admitted he was aware of this policy. At trial, Borman's introduced evidence of twenty-six other incidents where employees were discovered misappropriating company property and were discharged.
 
 
 16
 Appellant filed his complaint on July 28, 1986. He alleged discrimination essentially based on the failure to give him a raise while increasing his duties and retaliatory action by Borman's in response to his filing of a discrimination charge.
 
 
 17
 A jury trial was held from August 28 to September 8, 1987. At the close of appellant's case, the court directed a verdict for Borman's on appellant's discrimination claim. The retaliation claim was submitted to the jury which returned a verdict for appellant. Appellee filed a motion for a J.N.O.V. or new trial or remittitur. The district court granted the J.N.O.V. The court based its ruling on the following conclusion: "Reasonable minds could not differ over the conclusion that plaintiff was discharged for violating a uniformly enforced policy against misappropriation of company property, in this case saleable bakery goods". The court alternatively granted the appellee a new trial: "If the Court is wrong in this conclusion defendant is entitled to a new trial since the verdict is clearly against the great weight of the evidence. It would be manifestly unjust to let the verdict stand." Appellant's motion for reconsideration was denied. Appellant timely appealed from the court's order granting judgment notwithstanding the verdict. He argues that the court erred in granting the J.N.O.V. The appellee counters this argument, and argues alternatively that if J.N.O.V. was improper a new trial should be granted or the award should be reduced.
 
 II.
 
 18
 The issue raised by a motion for a judgment n.o.v. is whether there is sufficient evidence to raise a question of fact for the jury. A reviewing court must apply the same standards. Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).
 
 
 19
 A recent statement of the Michigan standard for judgments n.o.v. is found in Cormack v. American Underwriters Corp., 94 Mich.App. 379, 288 N.W.2d 634 (1979). The Michigan court wrote that:
 
 
 20
 A judgment n.o.v. on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment n.o.v., the Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof or the necessary elements of his cause of action, judgment n.o.v. for the defendant is improper.
 
 
 21
 Id. at 636 (emphasis added). This language is virtually identical to the Sixth Circuit's language in Morelock, and thus we conclude that the Michigan standard for judgments n.o.v. is legally equivalent to the federal standard.
 
 
 22
 Warkentien v. Vondracek, 633 F.2d 1, 6-7 (6th Cir.1980).
 
 
 23
 This court has recently addressed the resolution of a retaliation case brought under Michigan law.
 
 
 24
 The retaliation claim was brought under state law. The Michigan courts view the McDonnell Douglas-Burdine analysis as persuasive in resolving claims brought pursuant to the Elliott-Larsen Act. See Clark v. Uniroyal, 119 Mich.App. 820, 327 N.W.2d 372, 374 (1982) Jenkins v. American Red Cross, 141 Mich.App. 785, 369 N.W.2d 223, 227 n. 2 (1985) ("It is appropriate to rely on federal precedent in deciding discrimination cases").
 
 
 25
 Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1012 (6th Cir.1987).
 
 
 26
 To support a claim of retaliatory discharge, a plaintiff must prove: (1) that she engaged in activity protected by Title VII; (2) that she was the subject of adverse employment action; and (3) that there is a causal link between her protected activity and the adverse action of her employer.
 
 
 27
 Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 375 (6th Cir.1984).
 
 
 28
 The crux of the retaliation issue is whether reasonable minds could come to the only conclusion that there is no causal link between appellant's filing of his discrimination charge and his adverse employment action. If reasonable minds could find a causal link, J.N.O.V. would be improper.
 
 
 29
 There are numerous ways in which a plaintiff can prove that an adverse action was retaliatory. This can be shown by direct evidence, such as employer anger over the employee's protected activity. It can be shown by evidence that the employer treated one employee different than similarly situated employees after learning of the protected activity or differently than the employer had treated the employee before he engaged in concerted activity. See Jackson, 243 F.2d at 377. The link can also be shown by evidence of attempts to conceal the fact that the person who took the adverse action knew that the employee had engaged in protected activity.
 
 
 30
 Appellant makes several factual arguments to support his contention that a reasonable mind could find that he established causation.
 
 
 31
 Initially, appellant claims that the following statement attributed to Berman showed animosity over his protected activity. "Mr. Berman told the [appellant] he had already filed the suit and if he would withdraw it then they would be able to sit down and talk." (Testimony of Willie Mae Cole). Berman gave the following testimony concerning the decision not to meet with appellant:
 
 
 32
 After I got the charge, I seem to recall, I contacted Mr. Smith from personnel and I said, Jim, am I able to talk with Kelly Yousef about this charge because I have been able to talk to him up to this point. He indicated it would be best if I didn't as it was going to be before an administrative forum and that's where the discussion could continue relative to the issue.
 
 
 33
 Appellant reads too much into the statement allegedly made by Berman. To argue that the statement quoted above shows anomosity does not seem reasonable, especially given the fact that Borman's was merely following a reasonable strategy of proceeding within administrative channels in dealing with a formal discrimination charge.
 
 
 34
 Appellant's second argument is that the following actions were in retaliation for his filing of the discrimination charge: he was given more responsibility, was required to work longer hours, was told to falsify a report to get another employee fired, and had to give three weeks notice for time off while other similarly situated employees had to give only one week's notice.
 
 
 35
 Although the jury may have considered this evidence in finding for appellant, this evidence is clearly not relevant to appellant's retaliation claim, since the incidents he cites occurred well before he made his first complaint of discrimination. Appellant made his first complaint on December 20, 1984. Appellant's hours and responsibilities were increased in April 1984 when Daneils was discharged. The incident with the other employee also occurred long before the discrimination complaint was made. Appellant testified that the report he filed was dated 12/27/83, nearly a year before this discrimination complaint. Finally, his allegation concerning the notice for days off is belied by his EEOC charge itself in which he charged that "In January, 1984 I was informed by Bill Fraki, manager, that I had to give three weeks notice when I needed a day off." It is clear that all of this evidence relates to a time period before appellant's initial discrimination complaint, therefore, a reasonable juror could not have found that appellant established a causal link between this activity and appellant's discrimination charge.
 
 
 36
 Appellant's final and major argument concerns his discharge for taking saleable merchandise from the warehouse. The evidence was clear that appellant took saleable merchandise from the warehouse, that Borman's had an expressed policy that it would discharge employees for misappropriation and that it had discharged many employees for similar acts. Appellant's contention is that Borman's through manager Fraki condoned the taking of merchandise. This contention is refuted by the testimony of Fraki which indicates that Fraki was testifying about policy concerning nonsaleable goods. Appellant also points to the testimony of Daniels concerning a short lived company policy allowing employees to take saleable goods from the warehouse which was in effect in 1976. This policy was terminated, however, and any further taking by employees was done out of resentment toward the policy change. Daniels indicated that her supervisors were unaware of the stealing. Given the evidence presented at trial, we believe a reasonable juror could not have found that Borman's had a policy of condoning the taking of saleable goods or that appellant's discharge for misappropriating such goods was in retaliation for filing his discrimination complaint.
 
 
 37
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 Appellant's discrimination claim brought under section 703(a)(1) of Title VII and section 202(1)(a) of the Elliott-Larsen Act was directed out at the close of his case. He does not appeal from this order