HILL, Appellant,

v.

The CHRIST HOSPITAL, Appellee.

[Cite as *Hill v. The Christ Hosp.* (1998), 131 Ohio App.3d 660.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970560.

Decided Nov. 20, 1998.

*Busald, Funk, & Zevely, P.S.C., Gail M. Langendorf* and *Jeffrey Aylor,* for appellant.

*Graydon, Head & Ritchey, Thomas A. Brennan* and *Michael A. Roberts,* for appellee.

---

DOAN, Presiding Judge.

Defendant-appellee, The Christ Hospital ("TCH"), hired plaintiff-appellant, Jacquie F. Hill, on September 14, 1981. In 1989, Richard Seim, an assistant vice-president at TCH, promoted Hill to the position of Director of Central Services. Central Services, a department with about eighty employees, was responsible for cleaning, sterilizing, and distributing surgical supplies. The previous Director of Central Services had been terminated by TCH. As Director of Central Services, Hill reported to Seim. Seim generally gave Hill above-average performance evaluations.

On October 26, 1992, Hill and her husband, Les Hill, filed a medical malpractice suit against TCH for the alleged misdiagnosis of Les Hill's cancer. The lawsuit papers were not served until April 27, 1993, but Jacquie Hill's supervisors at TCH knew about the lawsuit in approximately October 1992.

During the autumn of 1992, TCH conducted an employee survey in several hospital departments, including Central Services. In November 1992, Seim gave Hill a "superior" evaluation, the highest performance evaluation an employee could receive. The superior evaluation was not communicated to Hill until January 26, 1993. At that time, Hill was given a bonus of $1,000. TCH rarely gave such a bonus.

The employee survey results were compiled in February 1993 and published in April 1993. Central Services had the lowest score of all the TCH departments. Employee satisfaction in Central Services was rated 38.5, the lowest score ever achieved by a TCH department. In addition, the surveys contained unfavorable comments directed toward Hill's management.

Hill stated in her deposition that Seim made light of the survey results. Hill stated that Seim told her not to take the survey results personally, but to use them as a baseline to indicate where improvements were needed. Hill stated that Seim told her that he was disappointed with the survey results, but that they would try to work on the problems. Hill also testified that Seim acknowledged that the previous year had been difficult due to an increased workload for Central Services.

Hill and her superiors met to discuss the survey results. Meetings were also held with individuals from TCH's Human Resources Department. Hill stated that she was assured by her superiors that they wanted to "work things out." Hill stated that Seim and his superior assured her that she did not need to worry about how the Human Resources Department was reacting to the survey results.

Hill testified that Seim indicated that Human Resources did not want anyone to lose a job over the survey results.

In April 1993, Seim began to investigate the problem in Central Services. Employees and supervisors were interviewed. The investigation revealed complaints regarding Hill. During the course of the investigation, a flier appeared in Central Services criticizing Hill and urging the unionization of the employees. As the investigation proceeded, employees related instances of Hill's mismanagement and retaliation against certain employees. The investigation uncovered widespread discontent among the employees with respect to Hill's management. Further, the investigation revealed serious leadership problems on the part of Hill and a lack of trust on the part of Hill's managerial staff. Seim stated in his deposition that, with one exception, Hill denied all issues that were raised and essentially refused to modify her behavior. Hill was terminated April 21, 1993.

TCH has created a manual that contains its policies and procedures. Section 28.07.105 of the policy manual provides:

"If a management employee's performance drops below satisfactory prior to his/her annual evaluation, the supervisor should request a Performance Appraisal Form from the compensation office of human resources. The form should be completed indicating the employee's less than satisfactory performance and indicating that the employee is being placed on a 120–day review. During that review period, the employee's supervisor should frequently meet with the employee to discuss his/her performance progress. These meetings are documented on Form HR–10, Employee Anecdote for Commendation/Counseling, and forwarded to human resources. If the employee's performance is not satisfactory at the end of the 120–day review, the employee may be terminated. Management employees on review will not qualify for general wage increase. The compensation office will forward another Performance Appraisal Form two weeks before the end of the 120–day review period.

"* * *

"Modifications and Exceptions

"The hospital reserves the right to unilaterally modify this policy and procedure at any time. Any exception must have the approval of the executive vice-president and be coordinated with human resources."

Hill was terminated without the benefit of the one-hundred-twenty-day review period.

On July 8, 1993, Hill filed the within complaint against TCH, alleging breach of contract, promissory estoppel, wrongful discharge, and violation of public policy. Hill alleged that TCH violated public policy in that her discharge was (1) in

retaliation for the filing of the malpractice lawsuit, and (2) an interference with the unionization of employees.

TCH filed a motion for summary judgment, which was overruled. Subsequently, a different trial judge assumed responsibility for the case. TCH filed a supplemental motion for summary judgment, which the trial court granted. Hill has appealed, raising four assignments of error for our review.

■ Hill's first assignment of error alleges that the second trial judge erred in granting TCH's supplemental motion for summary judgment because the first trial judge had overruled TCH's motion for summary judgment.

■ Until a final judgment is entered in a case, the trial court may change, modify, or revise its rulings. *Fish v. INA Underwriters Ins. Co. of California* (July 26, 1989), Hamilton App. No. C–880299, unreported, 1989 WL 82291. In *Fish,* we held that a second trial judge acted within his authority in granting a motion for reconsideration of the first trial judge's pretrial discovery order.

In *Meyer v. Gulf Oil Corp.* (May 7, 1980), Hamilton App. No. C–790081, unreported, all defendants filed motions for summary judgment, which were overruled by the first trial judge. Subsequently, that judge retired. His successor entertained motions for reconsideration and granted the motions for summary judgment. We held that the second trial judge had proceeded properly, stating:

"In counties having more than one Common Pleas judge, decisions by each judge are entitled to due consideration and respect by the others, and each judge's decision should be adhered to by the others whenever possible, but failure to do so does not amount to prejudicial error absent a showing that the second judge in some manner failed to adhere to the Civil Rules." *Id.* See, also, *Olohan v. Bethesda Hosp.* (Oct. 30, 1985), Hamilton App. No. C–840697, unreported, 1985 WL 11520.

The record in the case *sub judice* does not reveal any violation of the Civil Rules by the second trial judge. The first assignment of error is overruled.

Hill's second assignment of error alleges that the trial court erred in granting summary judgment in favor of TCH because genuine issues of material fact existed with regard to whether the employee manual, along with oral representations made to Hill, rose to the level of an implied contract of employment. Hill argues that there are genuine issues of material fact as to whether section 28.07.105 of TCH's policy manual, which provides for a one-hundred-twenty-day review period for a management employee who is performing unsatisfactorily, along with TCH's policy of encouraging longevity and loyalty among its employees, and Seim's statements tending to discount the employee surveys, altered the

at-will nature of Hill's employment to an employment based upon an implied contract.

■ In order to grant summary judgment, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with such evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274.

■ "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis omitted.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276.

■ The party asserting an implied contract of employment has a heavy burden. *Root v. PCC Airfoils, Inc.* (Oct. 1, 1998), Cuyahoga App. Nos. 73149, 73150, 73151, 73402, 73403 and 73404, unreported, 1998 WL 686117. The plaintiff must show a "meeting of the minds" that the employment was other than at-will. *Id.*

■ In order to determine whether an at-will employment has been altered by an implied agreement, the court must look to the history of relations between the employer and employee and the facts and circumstances surrounding the employment-at-will relationship. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 264–265, 483 N.E.2d 150, 154. The facts and circumstances surrounding the employment include "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question." *Id.* Other factors to be considered include information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy. *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381, 384; *Stumpf v. Cincinnati, Inc.* (Dec. 26, 1997), Hamilton App. Nos. C–960605 and C–960632, unreported, 1997 WL 789401.

In *Walker v. Procter & Gamble Co.* (Oct. 2, 1996), Hamilton App. No. C–950188, unreported, 1996 WL 557799, we stated:

"Generally, items such as employer handbooks, company policy or oral representations do not create employee rights which alter the at-will nature of employment unless the parties have a 'meeting of the minds' indicating that such items are to be considered valid contracts altering the terms for discharge. *Bartlett v. Daniel Drake Memorial Hospital* (1991), 75 Ohio App.3d 334, 599 N.E.2d 403. Absent the necessary mutual assent by the employer and the employee to establish employment termination rights, handbooks or other supplementary manuals or materials merely constitute unilateral statements of company rules and regulations." *Id.* See, also, *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 549 N.E.2d 1223.

In *Shepard v. The Limited, Inc.* (June 8, 1993), Franklin App. No. 92AP–1440, unreported, 1993 WL 221024, the Tenth District Court of Appeals held that a performance review that required that an employee meet certain goals and objectives pursuant to a one-hundred-twenty-day action plan did not create a contract that altered the at-will nature of the employment. An action plan containing specific steps that an employee and her manager were going to take during the upcoming year to support the employee's growth and development did not modify the at-will nature of the employment. *Walker v. Procter & Gamble Co., supra.*

■ We hold that the record shows no contractual intent existed between the parties to modify Hill's at-will employment. Nothing was presented to show that the one-hundred-twenty-day review policy was a manifestation of an intent by the parties to bind each other to a contract. The policy was not mandatory, as evidenced by the use of the word "should" instead of "shall" or "must." The manual stated that TCH reserved the right to unilaterally modify the policy and procedure at any time. Further, the manual provided for exceptions to the policy and procedure. The manual's provision for modifications and exceptions to the policy and procedure manifests the absence of mutual assent to create a contract. See *Tohline v. Cent. Trust Co., N.A., supra.* There is nothing in the manual that altered the at-will nature of Hill's employment.

■ Further, the remarks by Seim do not rise to the level of an implied contract of employment. It is not reasonable to believe that TCH, through Seim, would enter into an employment contract with Hill, an unsatisfactory employee, that altered her at-will status. See *Walker v. Procter & Gamble Co., supra.* The statements made by Seim show only that Hill's superiors attempted to support her until they were left with no alternative but to terminate her. The record shows that, as a result of the employee survey, Seim began an investigation. The investigation revealed serious dissatisfaction among the employees with Hill's leadership. When Seim met with Hill to discuss the survey results, Hill knew that her performance was unsatisfactory. Hill also knew that the previous

Director of Central Services had been terminated because of problems with the employees, including Hill. Seim stated that initially he wanted to work with Hill to correct the problems and that he encouraged her in that respect. Hill refused to take responsibility for the problems revealed by the survey results, or even to acknowledge that problems existed in her department. Hill was not willing to change her managerial style.

We hold that the trial court did not err in granting summary judgment on Hill's claim for breach of an implied contract of employment because the record shows that no contractual intent existed between the parties to modify the at-will nature of her employment. The second assignment of error is overruled.

 Hill's third assignment of error alleges that the trial court erred in granting TCH's motion for summary judgment on her promissory-estoppel claim because genuine issues of material fact existed with regard to whether the employee manual, along with oral representations made to Hill, created a reasonable expectation of continued employment upon which Hill relied to her detriment.

 Under the theory of promissory estoppel, an employer may be prevented from terminating an employee if the employer has made promises upon which an employee has reasonably relied. *Walker v. Procter & Gamble Co., supra.* The test is "whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers v. Dispatch Printing Co., supra,* paragraph three of the syllabus. For a representation to support a promissory-estoppel exception to employment at will, the statement must be a "specific promise of continued employment." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212; *Trader v. People Working Cooperatively, Inc.* (1994), 104 Ohio App.3d 690, 663 N.E.2d 335. In order to apply the doctrine of promissory estoppel, it is essential that the employee show some harm in relying on the employer's representations. *Pulver v. Rookwood Highland Tower Invest.* (Mar. 26, 1997), Hamilton App. Nos. C–950361 and C–950429, unreported, 1997 WL 133422.

In order to support her claim for promissory estoppel, Hill relied on the same oral representations and TCH manual that formed the basis of her breach-of-contract claim. We hold that the record contains no evidence of any written or oral promise of continued employment by TCH upon which Hill could have been reasonably expected to rely. Further, there is no evidence that Hill refrained

from seeking other employment or otherwise relied to her detriment on any promise of employment. The third assignment of error is overruled.

Hill's fourth assignment of error alleges that the trial court erred in determining that no genuine issue of material fact existed as to whether Hill was terminated in retaliation for the filing of the medical malpractice lawsuit against TCH.

The record contains no evidence that Hill was terminated in retaliation for filing the malpractice lawsuit. Hill's superiors at TCH knew about the lawsuit in approximately October 1992. Hill was terminated approximately six months after the malpractice lawsuit was filed. Proximity in time is not enough to establish a causal connection between the filing of the lawsuit and Hill's termination. See *Griswold v. Fresenius USA, Inc.* (N.D.Ohio 1997), 978 F.Supp. 718; *Cooper v. N. Olmsted* (C.A.6, 1986), 795 F.2d 1265; *Briner v. Natl. City Bank* (Feb. 17, 1994), Cuyahoga App. No. 64610, unreported, 1994 WL 50673.

In November 1992, Seim gave Hill a superior evaluation, the highest performance evaluation an employee could receive. When the superior evaluation was communicated to Hill in January 1993, she was given a bonus of $1,000. Seim gave Hill the superior evaluation and bonus after learning about the malpractice lawsuit. It was not until the employee survey results were compiled and reported that Hill's superiors began to question her ability to manage. Hill testified that she believed that up until April 16, 1993, Seim did not intend to terminate her employment. Hill's superiors attempted to support her until they were left with no alternative but to terminate her in light of her denial of the existence of the problems in her department and her refusal to change her behavior. The fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, Judge, concurs.

HILDEBRANDT, J., dissents.

HILDEBRANDT, Judge, dissenting.

I respectfully dissent from the decision of my colleagues because I believe that the trial court did not apply the appropriate standard in reviewing defendant's motion for summary judgment and improperly weighed the evidence in this case. I would hold that genuine issues of material fact exist regarding plaintiff's implied-contract claim and her public-policy claim.

The standard for summary judgment bears repeating in this case. Summary judgment pursuant to Civ.R. 56(C) may be granted *only* when no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 276, the Ohio Supreme Court clarified the burden of the moving party:

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis omitted.)

In reviewing a motion for summary judgment, the court must construe the evidence and make all inferences in favor of the nonmoving party. See *Temple*, 50 Ohio St.2d at 327, 4 O.O.3d at 471–472, 364 N.E.2d at 274.

Plaintiff claims that defendant violated an implied contract between them when it terminated her employment. The Ohio Supreme Court has had occasion to explain the parameters of an implied-contract claim of employment and wrongful discharge.

In *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381, 384, the Ohio Supreme Court stated:

"[I]n order to overcome a summary judgment motion and to raise a factual issue as to whether an employment-at-will agreement has been altered by an implied agreement, the trier of fact can consider, in addition to the facts and circumstances set forth in *Mers v. Dispatch Printing Co., supra*, such evidence, which includes, but is not limited to, that information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy."

The court in *Mers* held that to ascertain the explicit and implicit terms concerning discharge, the trier of fact may consider "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question * * *." *Mers, supra,* paragraph two of the syllabus.

The *Honda* court held that an array of evidence supported the plaintiff's claim that her employment-at-will agreement had been altered. Statements made at employee orientation, language in the employee handbook, progress reports, promotion letters, and the company's course of dealing with the plaintiff all provided evidence "to create a fact question as to whether Honda, through its policies, past practices, and representations altered the at-will nature of the employment agreement by creating an expectation of continued employment." *Honda* at 577, 653 N.E.2d at 385. Particularly relevant to this case is the court's recognition that even if the company handbook was not "in and of [itself] a contract of employment, [it is] nevertheless evidence of the employment contract." *Id.* at 575, 653 N.E.2d at 384.

Plaintiff here presented evidence that the past practice of the hospital, when dealing with performance problems, was to follow the terms of the handbook and provide management employees a one-hundred-twenty-day period in which to improve their performance. Although Seim testified that he thought that the procedure was simply one option, plaintiff testified that she had been told that the handbook procedures were mandatory and Seim admitted that the department head before plaintiff had been given the one-hundred-twenty-day review before she was terminated for poor performance.

The course of dealing between the parties also demonstrated that the employment-at-will nature of plaintiff's employment was altered. There is no dispute that Seim repeatedly assured plaintiff that she was not going to be fired and that she would be given an opportunity to resolve the problems raised by the employee complaints. Thus, I disagree with the majority's dismissal of plaintiff's claims on the ground that "no contractual intent existed between the parties to modify Hill's at-will employment." As stated in *Wright v. Honda*, even if the handbook is not itself a contract, it is nevertheless evidence of the terms of Hill's employment. See *Honda, supra.*

The provisions of the hospital handbook, the hospital's past practice, and the hospital's course of dealing with plaintiff combine to create a genuine issue of fact as to whether the at-will nature of plaintiff's employment was altered. Admittedly, the hospital did not provide the one-hundred-twenty-day review period, and the reasons stated for plaintiff's termination are the subject of dispute. I would hold that summary judgment was improperly granted on plaintiff's implied-contract claim.

I also believe that plaintiff's public-policy claim should survive summary judgment. The Supreme Court of Ohio held in *Greeley v. Miami Valley Maintenance Contractors* that the right of an employer to terminate an employee for any reason or no reason does not include the termination of an employee for a reason that violates Ohio public policy. *Greeley v. Miami Valley Maintenance*

*Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus. See, also, *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus. Public policy can be found in state statutes, the federal and state constitutions, administrative rules and regulations, and common law. *Painter, supra,* at paragraph three of the syllabus.

In *Painter v. Graley,* the court set out the recommended analysis of a plaintiff's claim for termination in violation of public policy:

"In reviewing future cases, Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the country, has described the elements of the tort as follows:

" '1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

" '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

" '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

" '4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).' " (Emphasis omitted.) See *Painter,* 70 Ohio St.3d at 384, 639 N.E.2d at 57, fn. 8. See, also, *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653; *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308; *Chapman v. Adia Serv., Inc.* (1997), 116 Ohio App.3d 534, 688 N.E.2d 604.

The clarity and jeopardy elements are questions of law to be determined by the court, while the causation and overriding-justification elements are questions of fact for the trier of fact. *Collins,* 73 Ohio St.3d at 70, 652 N.E.2d at 658; *Kulch,* 78 Ohio St.3d at 151, 677 N.E.2d at 321; *Chapman,* 116 Ohio App.3d at 542, 688 N.E.2d at 609. In the context of a summary judgment motion, the court considers only the first two factors. *Id.*

This court has already recognized a cause of action for wrongful termination in violation of public policy based on an employee's claim that she was terminated for consulting an attorney about a potential lawsuit against a customer of her employer's, even though the employee's claim was adverse to her employer's interest. See *Chapman, supra.* The sources of public policy identified by the court as supporting the right to consult an attorney included Section 16, Article I of the Ohio Constitution: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have a remedy by due course of law * * *." See *id.* This court also emphasized that consulting an attorney was the first step in gaining access to the courts and held that

terminating an employee for consulting an attorney could interfere with an individual's attempt to gain recourse for injuries through the court.

Other Ohio laws protect an employee's right to bring claims against his or her employer without fear of retaliation or termination. Ohio law prohibits an employer from terminating an employee for pursuing a workers' compensation claim, R.C. 4123.90, for suing for discrimination based on race, sex, national origin, and other factors, R.C. 4112.02(I), or for bringing a lawsuit to compel compliance with Ohio's minimum-wage laws, R.C. 4111.13. I would hold that Ohio has a clear public policy in favor of free access to the courts for redress of injuries, including actions by employees against their own employers.

As to the jeopardy element, I would hold also that termination of an employee for seeking recourse through the courts, a right guaranteed by the Ohio Constitution, would be compromised or jeopardized if an employer were allowed to discharge an employee for bringing a good-faith claim. An employee would otherwise be forced to choose between seeking access to the courts and continuing his employment. The courts in *Chapman* and *Kulch* both rejected such an outcome. See *Chapman* at 543, 688 N.E.2d at 610; *Kulch,* at 154–155, 677 N.E.2d at 324. Thus, I would hold that the jeopardy element has also been clearly established in this case.

The majority has held that plaintiff failed to present any evidence that her termination was caused by the fact that she and her husband filed a lawsuit against the hospital. However, the Supreme Court of Ohio has stated that only the clarity and jeopardy elements are to be considered in a motion for summary judgment. The causation and justification elements are questions of fact. See *Collins,* 73 Ohio St.3d at 70, 652 N.E.2d at 658.

Even if this court were to consider the causation factor of the public-policy claim, I would nevertheless hold that genuine issues of material fact exist relating to causation. Under Ohio law, a causal connection between one act and an adverse action by an employer can be established by showing that the adverse action occurred sufficiently close in time to the protected act to raise an inference of retaliation. See, *e.g., Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 622 N.E.2d 1130, jurisdictional motion overruled (1993), 67 Ohio St.3d 1481, 620 N.E.2d 854. In those cases in which a plaintiff has pointed to nothing more in the record than the occurrence of the adverse action after the protected activity, courts have held that the plaintiff has failed to raise a genuine issue of fact regarding causation.

However, if the plaintiff has other circumstantial evidence, the proximity in time may be enough to preclude summary judgment on the causation issue. Such circumstantial proof can include evidence that the employer reacted negatively to the employee's protected activity; that the employee was treated

differently from other employees following the protected activity, or that the company deviated from its own policies in disciplining an employee following protected activity. See, *e.g., Yousef v. Borman's Foods, Inc.* (Dec. 28, 1988), C.A.6 No. 88–1006, unreported, 1988 WL 138966, citing *Jackson v. RKO Bottlers of Toledo, Inc.* (C.A.6, 1984), 743 F.2d 370, 377; *Harrison v. Metro. Govt. of Nashville & Davidson Cty.* (C.A.6, 1996), 80 F.3d 1107, 1118–1119; *Griswold v. Fresenius USA, Inc.* (N.D.Ohio 1997), 978 F.Supp. 718, 733; *Kowalski v. Kowalski Heat Treating* (N.D.Ohio 1996), 920 F.Supp. 799, 805; *Thatcher v. Goodwill Indus. of Akron* (1997), 117 Ohio App.3d 525, 535–536, 690 N.E.2d 1320, 1327.

In this case, plaintiff was terminated only six months after her lawsuit was filed. She alleged that Seim told her that Phil Temple would react negatively to her filing the lawsuit. Seim admitted that he might have led the plaintiff to believe that Temple would be angry and might retaliate. Seim also testified that the lawsuit caused concern to the management at the hospital and that it was widely discussed. Plaintiff was treated differently than the previous department director, who had been given a one-hundred-twenty-day period to improve her performance. The failure to provide the one-hundred-twenty-day review period violated the terms of the hospital's manual. Right up until she was actually terminated, Seim continued to assure plaintiff that she would not be terminated and that she would be given the opportunity to work on the problems raised in the satisfaction survey and in the meetings Seim had held with other employees plaintiff supervised. Although plaintiff knew that complaints and problems existed with respect to her management, her termination can be described as sudden and unexpected in light of Seim's continued assurances.

Construing this evidence in the light most favorable to plaintiff, I would hold that the evidence raises an issue of fact as to whether plaintiff's discharge was causally connected to the filing of the lawsuit.

For the foregoing reasons, I disagree with the majority and dissent from its disposition of this case. I would reverse and remand for further proceedings.