OPINION
Plaintiff-appellant David Barnes appeals the decision of the Harrison County Common Pleas Court granting summary judgment to defendants-appellees Village of Cadiz (Cadiz) and Steubenville Branch of the NAACP (NAACP). Relative to his first assignment of error, we are asked to decide whether a police officer subject to a probationary period of employment pursuant to R.C. 737.17, is a "statutory employee" or an employee at-will for purposes of a wrongful termination claim. If Barnes is an employee at-will, we are then asked to decide if Barnes presented sufficient facts to defeat Cadiz's motion for summary judgment. Regarding the second assignment of error, we must decide whether Barnes presented sufficient facts to defeat NAACP's motion for summary judgment. For the following reasons, the decision of the trial court is hereby affirmed.
 STATEMENT OF FACTS
Barnes was employed at the Cadiz Police Department for over eight years. He started out as a part-time auxiliary police officer and was then appointed to a full-time position in July 1998. The full-time position had a six month probationary period. Although he did receive the 1997 Officer of the Year award, it appears that Barnes was a controversial figure at the Cadiz Police Department due in part to his arresting a member of the mayor's family.
The parties dispute the exact occurrences in the Cadiz Police Department during the time Barnes was a police officer. Barnes claims that he was asked by Mayor Raymond Jones Sr., who is now the former mayor, and Chief of Police "Doc" Spaar to dismiss charges against friends of Chief Spaar and Mayor Jones. Barnes also claims that evidence from his official investigations came up missing before the charges were taken to the county prosecutor in the cases where he was asked to dismiss the charges but refused. Mayor Jones and Chief Spaar deny ever asking Barnes to dismiss charges.
During the time Barnes was on the police force, there were complaints about his conduct. The NAACP investigated Barnes in response to the complaints filed by African American citizens in Cadiz. For instance, Robin Baker filed a complaint with the NAACP about what she felt was police harassment after an incident at the Country Club. Reed, the Co-Chairman of Industrial and Jobs for the NAACP for Harrison County,[1]
had concerns about Barnes' position on the police force. He would stand on the street corner and pass out old newspaper clips involving Barnes. He also told Baker that Barnes was a "child molester."
In October 1998 during the six month probationary period, Barnes was terminated from the police force. During depositions, it was disclosed that the reason for the termination was conduct unbecoming to a police officer. After his termination, Barnes filed a complaint against the NAACP and the Village of Cadiz. He claimed that Cadiz wrongfully terminated his employment. He also claimed that the actions of Reed on behalf of the NAACP constituted defamation and tortious interference with his contract of employment. Cadiz and the NAACP filed motions for summary judgment. The trial court granted the motions. This timely appeal followed.
 STANDARD OF REVIEW
An appellate court reviews a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102. Summary judgment is properly granted when: 1) no genuine issue as to any material fact exits; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can only come to one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The evidence must be viewed in the light most favorable to the nonmoving party. Id.
 ASSIGNMENT OF ERROR NO. ONE
Barnes raises two assignments of error on appeal, the first of which contends:
 "THE COURT ERRED IN GRANTING DEFENDANT VILLAGE OF CADIZ'S MOTION FOR SUMMARY JUDGMENT."
Two issues arise under this assignment of error. Initially, we must determine whether Barnes was a statutory employee or an employee at-will. Then, we must evaluate the existence of any genuine issues of material fact concerning Barnes' claim of wrongful termination.
 STATUTORY EMPLOYEE'S ABILITY TO BRING A WRONGFUL DISCHARGE CLAIM
The Village of Cadiz claims that Barnes has no right to raise a wrongful termination claim because he is a statutory public employee. Cadiz claims that a wrongful termination claim can only be brought by common law at-will employees. Cadiz supports its argument by citingHaynes v. Zoological Soc. of Cincinnati (1995), 73 Ohio St.3d 254. Barnes argues that Haynes does not require the employee to be an at-will employee as defined by common law but rather just an at-will employee.
In Haynes, the Ohio Supreme Court stated that an employee must be an employee at-will in order to bring a wrongful discharge cause of action.Id. In determining if an employee is an at-will employee, the identifying characteristic is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law.Id. at 258, citing Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100; Boggs v. Avon Products Inc. (1990), 56 Ohio App.3d 67.
Pursuant to R.C. 737.17, a police officer shall be appointed for a probationary period prior to becoming a full-time officer. At the end of the probationary period, the mayor gives a recommendation to the legislative authority of the village whether to remove or appoint the employees to a full-time position. R.C. 737.15 and 737.16 dictate that once an employee satisfactorily serves the probationary period and becomes full-time, that employee can only be removed for cause. Piper v.Felver (1988), 55 Ohio App.3d 7. However, during the probationary period, the employee has no right to a hearing or notice of dismissal.Curby v. Archon (C.A. 6 2000), 216 F.3d 549. A probationary employee does not have the same rights to be terminated for cause as does a full-time employee. A probationary employee does not even have a property interest in their employment. Id.
In accordance, we hold that during the probationary term under R.C.737.17, a police officer is an employee at-will and can be terminated for any reason that is not contrary to law. Here, Barnes never satisfactorily completed his probationary term. He was terminated prior to the completion of the statutorily mandated probationary period. Thus, he was an at-will employee.
 PROPRIETY OF SUMMARY JUDGMENT
Although only a full-time officer has the right to be terminated only for cause and the probationary officer can be terminated without cause, the probationary officer may have a wrongful discharge claim under the public policy exception to the employment at-will doctrine. To prevail on this wrongful discharge claim, the following four elements must be met. First, there must exist a clear public policy that is manifested in a state or federal constitution, statute or administrative regulation, or in the common law. Kulch v. Structural Fibers, Inc. (1997),78 Ohio St.3d 134, 151 (characterizing this first element as the clarity element). Second, dismissal, under the alleged circumstances, must jeopardize the public policy. Id. (characterizing the second element as the jeopardy element). Third, plaintiff's dismissal must be motivated by conduct related to the public policy. Id. (characterizing the third element as the causation element). Finally, there must be no overriding legitimate business justification for the dismissal. Id. (characterizing the fourth element as the overriding justification). The causation and overriding justification elements are questions of fact for the jury, and the clarity and jeopardy elements are questions of law for the court.Id.
Barnes claims the clarity and jeopardy elements were met. Initially, he notes that public policy dictates that police officers enforce the laws of the State of Ohio. State v. Byomin (1958), 106 Ohio App. 393; R.C.737.18; R.C. 737.19. He then states that dismissing a police officer for enforcing the laws would jeopardize the public policy of wanting police officers to enforce the laws of Ohio. Assuming the clarity and jeopardy elements were met, Barnes did not fulfill his burden on the remaining elements. Although causation and overriding justification are factual elements, upon the movant's showing the lack of causation and the existence of overriding justification through depositions, the nonmovant has the reciprocal burden to demonstrate causation and the lack of an overriding justification. See Wood v. Dorcas (2001), 142 Ohio App.3d 783,793; Chapman v. Adia Serv., Inc. (1997), 116 Ohio App.3d 534, 542.
Barnes claims that some events that allegedly caused his termination took place while he was a full-time officer. Nonetheless, the depositions reveal that the events happened while he was an auxiliary police officer. He mentions that he was asked to dismiss charges once while he was a full-time officer. However, the only specific, concrete examples occurred while he was an auxiliary officer; none of the specific examples he cited occurred in the three months he was a full-time police officer. For instance, he arrested the son of Mayor Jones while he was an auxiliary officer, before he was a full-time probationary officer. Similarly, the allegations of evidence-tampering referred to the time when he was an auxiliary officer. Notably, Barnes was promoted to a full-time officer after he allegedly refused to drop charges against friends and family members of Chief Spaar and Mayor Jones.
Moreover, the termination and the actions claiming to result in the termination are not close in time. Although proximity in time between the event and the termination is not, per se, an element in a wrongful termination action, it has relevance with regard to the element of causation. The causation element requires that the dismissal be motivated by the conduct relating to the public policy. Although the causation element is usually for the trier of fact, the trial court stated, "The lengthy passage of time between the alleged matters and the discharge precludes any reasonable inference that the discharge was the result of these alleged matters."
Nonetheless, we find the case of Hill v. Christ Hosp. (1998),131 Ohio App.3d 660 to be instructive. In that case, the First Appellate District noted that the plaintiff was given a superior evaluation and a $1,000 bonus after the act that she alleged triggered the retaliatory discharge. Id. At 669. Hence, it found that although six months from the act until firing may appear proximate in time, the intervening positive employer actions rebut her contention that her firing was caused by her prior acts. As such, the court affirmed the summary judgment on the issue of causation. Id. at 669. We do note that the dissent in Hill complained that causation is a question for the jury. Yet, the Ohio Supreme Court declined to hear the appeal. (1999), 85 Ohio St.3d 1446.
Barnes was hired full-time after occurrence of the specific incidents he lists as the motive for his termination. Even more compelling than inHill, the time period between Barnes' actions and the termination was more than one year. For the above stated reasons, Barnes' first assignment of error lacks merit. The trial court's grant of summary judgment to the Village of Cadiz is hereby affirmed.
 ASSIGNMENT OF ERROR NO. TWO Barnes' second assignment of error contends: "THE COURT ERRED IN GRANTING DEFENDANT NAACP'S MOTION FOR SUMMARY JUDGMENT."
Barnes claims that the NAACP, through Reed, made defamatory statements about him. NAACP claims that Reed is not an agent of the NAACP, and even if he was, Reed was not acting within the scope of his employment.
Police officers acting within the scope of their official capacity are public officials under Ohio's libel law. Mueller v. StorerCommunications, Inc. (1988), 46 Ohio App.3d 57, 59. Therefore, they enjoy only limited protection from public discussion and criticism of their performance as public officials. Id. In order for a police officer to prove defamation, he must prove by clear and convincing evidence that the statement was made with actual malice. Actual malice is acting with knowledge that the statement is false or with reckless disregard to the falsity of the statement. New York Times v. Sullivan (1964), 376 U.S. 254,279-80; McKimm v. Ohio Elections Comm. (2000), 89 Ohio St.3d 139, 147.
Here, Reed told Baker that Barnes was a child molester and told others Barnes was fired from jobs because of things he did with girls. Reed even admits to commenting about Barnes being fired from jobs knowing that the statement was false. Reed states in his deposition that he was reading "between the lines" to come to the conclusion that Barnes was a child molester. Clearly these statements at the very least, make an arguable case for a finding of actual malice. However, that finding is of significance only if Reed's statements expose the NAACP to potential liability as Reed's principal.
In support of that proposition, Barnes utilizes the principle of agency. Courts have ruled that agency principles under the First Amendment may only be used if an employer-employee relationship is present and gives rise to respondeat superior liability. Secord v.Cockburn (1990), 747 F. Supp. 779, 787; Hunt v. Liberty Lobby (C.A.11, 1983), 720 F.2d 631, 649; Nelson v. Globe Int'l., Inc. (S.D.N.Y. 1986),626 F. Supp. 969, 977. Moreover, in respondeat superior situations, "the relationship of principal and agent exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks."Hanson v. Kynast (1986), 24 Ohio St.3d 171, 173.
In Hanson, the Court analyzed three primary factors to examine in determining if there is a necessary degree of control. Id. at 175. The first element is whether the individual is performing in the course of the principal's business rather than in some ancillary capacity. Id. Second, one must consider whether the individual was receiving any compensation from the principal. Third, it should be determined whether the principal supplied the tools and the place of work in the normal course of the relationship. Id.
Barnes fails to provide sufficient facts to show control to overcome the motion for summary judgment. Reed stated in his deposition that he was not acting in his capacity for the NAACP in making the defamatory statements. He said that the child molester comment and passing out the newspaper clips came from him personally, not from him acting on behalf of the NAACP. He also noted that he is not allowed to make statements on behalf of the NAACP without their permission. NAACP claimed Reed was just a citizen volunteer who was to clip and save employment ads.
Even if the conclusion can be drawn that Reed was an employee of the NAACP, there are no facts insinuating that he was acting within the scope of employment when he stated that Barnes was a child molester or when he was passing out the newspaper articles. An agent acts within the scope of their employment when they act with actual authority or apparent authority. Master Consol. Corp. v. BancOhio Natl. Bank (1991),61 Ohio St.3d 570, 576. Actual authority may be express or implied.Damon`s Missouri Inc. v. Davis (1992), 63 Ohio St.3d 605, 608. The deposition of Reed shows that the actions and statements regarding Barnes were made of his own accord, without consultation, direction, or approval from any officer at the NAACP. Furthermore, no evidence was presented that could infer that Reed was permitted to take these actions before this incident or to make him believe he was permitted to take these actions against Barnes on behalf of the NAACP. Thus, even if he were considered an employee of NAACP, Barnes did not meet his reciprocal burden to show a genuine issue of material fact concerning the scope of employment. From the evidence presented, no reasonable inference can be drawn that Reed had the actual authority to act as he did on behalf of the NAACP.
Furthermore, there is nothing in the record to support the proposition that Reed was acting with the apparent authority of the NAACP. For apparent authority to exist, the NAACP needed to have made representations leading Barnes to believe that Reed was operating as an agent under the NAACP's authority. BancOhio, 61 Ohio St.3d at 576. To meet the standards of apparent authority, the acts of the principal must be examined. Id. The acts of the principal must clothe the agent with the appearance of authority. Id. at 576-577. The agent's own conduct does not create the apparent authority. Id.
The affidavit of Dolores Wiggins, the president of the NAACP, stated that she was unaware of the conduct or statements of Reed. Reed was not actually employed by the NAACP and was not compensated for the actions he took. The only thing he was asked to do as a citizen volunteer was to clip and save employment ads from local papers and forward them to the NAACP. Therefore, his actions of standing on the street corner and passing out old newspaper clips about Barnes or speaking to Baker and telling her Barnes was a child molester were not within his scope of employment. Barnes presents no evidence that the NAACP gave Reed authority to take the actions he took. Barnes did not meet his reciprocal burden of presenting sufficient evidence to establish that a genuine issue of material fact exists regarding Reed's actions in relation to the NAACP. As such, the second assignment of error is without merit.
For the forgoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs.
[1] Harrison County does not have its own chapter of the NAACP; instead, it is part of the Steubenville Chapter of the NAACP.